In re Fisher et al.

[Cite as In re Fisher (1974), 39 Ohio St. 2d 71.]

(No. 73-903—Decided July 10, 1974.)

72

*Mr. James A. Ciocia, Mr. Edward R. Stege, Jr., Mr. Douglas L. Rogers, Mr. Alan H. Yamamoto, Mr. Franklin J. Hickman* and *Mr. Kenneth Traeger,* for appellees.

*Mr. William J. Brown,* attorney general, *Mr. Leo J. Conway* and *Mr. Simon B. Karas,* for appellant.

CORRIGAN, J. Appellant presents two issues for this court's consideration.

In his first proposition of law, appellant maintains that a petition for a writ of habeas corpus which does not attack the jurisdiction of the court which committed the petitioner to the custody of the respondent does not state a claim upon which habeas corpus relief may be granted under R. C. 2725.05.

In his second proposition of law, appellant urges that the due-process clause of the Fourteenth Amendment to the United States Constitution does not require the mandatory appointment of counsel for an indigent in a civil mental commitment hearing held pursuant to R. C. 5122.-15.

*I.*

Appellant bases his first proposition of law upon the language of R. C. 2725.05, which this court has stated to be declaratory of the common law in this state. *Freeman* v. *Maxwell* (1965), 4 Ohio St. 2d 4. R. C. 2725.05 reads, as follows:

"If it appears that a person alleged to be restrained of his liberty is in the custody of an officer under process issued by a court or magistrate, or by virtue of the judgment or order of a court of record, and that the court or magistrate had jurisdiction to issue the process, render the judgment, or make the order, the writ of habeas corpus shall not be allowed. If the jurisdiction appears after the writ is allowed, the person shall not be discharged by reason of any informality or defect in the process, judgment, or order."

Appellant asserts that, because appellees failed to attack the jurisdiction of the Probate Court which issued

the commitment order and failed to allege that they were no longer mentally ill, issues cognizable in habeas corpus pursuant to R. C. 5122.30, appellees did not state a claim upon which relief could be granted, and that the Court of Appeals' decision granting appellees relief was erroneous.

Appellant concedes that the appellees' argument that habeas corpus is a proper action to attack a void judgment is correct, but maintains that for a judgment to be void it must be made by a court without jurisdiction. See *State* v. *Perry* (1967), 10 Ohio St. 2d 175.

However, appellees' claims are based upon a denial of due-process rights under the Fourteenth Amendment to the United States Constitution, and the United States Supreme Court has specifically allowed the use of the writ of habeas corpus to enforce such rights. *Fay* v. *Noia* (1963), 372 U. S. 391.

In *Young* v. *Ragen* (1949), 337 U. S. 235, the United States Supreme Court discussed the doctrine of exhaustion of state remedies, to which the court had required scrupulous adherence by all federal courts. The court stated that the doctrine presupposed the existence of some adequate state remedy by which prisoners may raise claims of denial of federal rights. The duty to provide such a procedure, the court stated, was mandatory upon states. In that case, the court remanded the cause for consideration of the present availability of habeas corpus in light of recent decisions by the Illinois Supreme Court, which Justice Vinson, writing for the majority, felt strongly indicated that state habeas corpus would now be the appropriate Illinois procedure.

In *Freeman* v. *Maxwell, supra* (4 Ohio St. 2d 4), this court explicitly stated that it had been permitting collateral attacks upon judgments of conviction in habeas corpus proceedings. We based our rationale for extending the right to relief in habeas corpus upon the lack of any other adequate remedy whereby a prisoner may assert and establish a deprivation of constitutional rights. However, the court's decision established that, in light of the avail-

ability of the recently enacted postconviction remedies provided by R. C. 2953.21 to 2953.24, inclusive, habeas corpus would no longer lie *to obtain relief from judgments of conviction for criminal offenses.*

Our decision in *Freeman* v. *Maxwell, supra,* does not, however, affect the right to habeas corpus in noncriminal areas where no adequate remedy for the vindication of federal constitutional rights exists. See *In re Brown* (1973), 35 Ohio St. 2d 9 (denial of counsel in a neglect proceeding in Juvenile Court).

If this court determines that the Fourteenth Amendment to the United States Constitution requires that indigents are entitled to court-appointed counsel at public expense in civil commitment hearings pursuant to R. C. 5122.15, then relief in habeas corpus must lie as the only adequate remedy available for a determination as to whether this right was denied. *In re Popp, supra* (35 Ohio St. 2d 142).

## II.

In his second proposition of law, appellant maintains that the due-process clause of the Fourteenth Amendment to the United States Constitution does not require the mandatory appointment of counsel for an indigent in a civil mental commitment hearing held pursuant to R. C. 5122.15. We disagree. The due-process clause of the Fourteenth Amendment to the United States Constitution guarantees that no state shall "deprive any person of life, liberty, or property, without due process of law * * *."

The decision most analogous to the case at bar was rendered by the United States Supreme Court in *In re Gault* (1967), 387 U. S. 1. That decision has been cited by the parties in the present case and by two federal courts in deciding issues similar to that presented in the case now before this court. *Heryford* v. *Parker* (C. A. 10, 1968), 396 F. 2d 393; *Lessard* v. *Schmidt* (E. D. Wis. 1972), 349 F. Supp. 1078.

In *Gault,* the Supreme Court held that quasi-criminal proceedings for determining the delinquency of a juvenile,

although often labeled "civil" and based upon the state proceeding as *parens patriae* in order to ensure treatment and rehabilitation of the juvenile rather than punishment, were nonetheless subject to the essentials of due process and fair treatment, including the right to appointed counsel at, and prior to, the hearing wherein the juvenile was adjudged delinquent.

In *Gault,* Mr. Justice Fortas, speaking for the majority, at page 36, based the court's decision as to the right to counsel upon the fact that in that case the delinquency proceeding carried with it "the awesome prospect of incarceration in a state institution until the juvenile reaches the age of 21" for a crime, which, if it had been committed by an adult, would have merited a maximum penalty of a fine from $5 to $50 or imprisonment in jail for not more than two months. In that case, however, Gault, a juvenile, was committed to custody for a maximum of six years.

In commenting upon the distinction between imprisonment and commitment for rehabilitation and treatment, Mr. Justice Fortas, at page 27, stated:

"* * * It is of no constitutional consequence—and of limited practical meaning—that the institution to which he is committed is called an Industrial School. The fact of the matter is that, however euphemistic the title, a 'receiving home' or an 'industrial school' for juveniles is an institution of confinement in which the child is incarcerated for a greater or lesser time. His world becomes 'a building with whitewashed walls, regimented routine and institutional hours . . . .' Instead of mother and father and sisters and brothers and friends and classmates, his world is peopled by guards, custodians, state employees, and 'delinquents' confined with him for anything from waywardness to rape and homicide."

We think that the logic of this decision should be extended to the present case. Appellant argues, however, that civil commitment for treatment and rehabilitation of the mentally deficient is distinguishable from juvenile delinquency proceedings, the net effect of which is not rehabilitation, but incarceration by the state.

This precise issue was determined by the Tenth Circuit Court of Appeals in *Heryford, supra* (396 F. 2d 393). The court, in resting its opinion that the mentally deficient were entitled to counsel at commitment hearings on the deprivation of liberty attendant to commitment, stated, at page 396:

"We do not have the distinction between the procedures used to commit juveniles and adults as in *Gault*. But, like *Gault*, and of utmost importance, we have a situation in which the liberty of an individual is at stake, and we think the reasoning in *Gault* emphatically applies. It matters not whether the proceedings be labeled 'civil' or 'criminal' or whether the subject matter be mental instability or juvenile delinquency. It is the likelihood of involuntary incarceration—whether for punishment as an adult for a crime, rehabilitation as a juvenile for delinquency, or treatment and training as a feeble-minded or mental incompetent—which commands observance of the constitutional safeguards of due process. Where, as in both proceedings for juveniles and mentally deficient persons, the state undertakes to act in *parens patriae*, it has the inescapable duty to vouchsafe due process, and this necessarily includes the duty to see that a subject of an involuntary commitment proceedings is afforded the opportunity to the guiding hand of legal counsel at every step of the proceedings, unless effectively waived by one authorized to act in his behalf. Certainly, this duty is not discharged when, as here, the prosecuting attorney undertakes to 'prosecute the application (for commitment) on behalf of the state', and the proposed patient is not otherwise represented by counsel. *In re Custody of a Minor*, 102 U. S. App. D. C. 94, 250 F. 2d 419; *Kent* v. *United States*, 383 U. S. 541, 86 S. Ct. 1045, 16 L. Ed. 2d 84; *McDaniel* v. *Shea*, 108 U. S. App. D. C. 15, 278 F. 2d 460; *Dooling* v. *Overholser*, 100 U. S. App. D. C. 247, 243 F. 2d 825; *Shioutakon* v. *District of Columbia*, 98 U. S. App. D. C. 371, 236 F. 2d 666; Anno. 87 A. L. R. 2d 950. Nor is it sufficient that the Wyoming statute permissively provides that the proposed patient 'may be represented by counsel'. Fourteenth Amendment.

due process requires that the infirm person, or one acting in his behalf, be fully advised of his rights and accorded each of them unless knowingly and understandingly waived.''

It should be noted that in *Heryford, supra* (396 F. 2d 393), the Wyoming statute mandated that the county and prosecuting attorney appear and prosecute the application on behalf of the state. Appellant in this case seeks to distinguish *Heryford* from the present situation on that basis.

This distinction, we believe, is meaningless. *Gault*, it should be noted, involved nonadversary proceedings, and the court pointed out that, although such proceedings were in theory nonadversary, yet the juvenile probation officer was in fact an arresting officer and superintendent of the detention home, and his duties at the hearing were to act as a witness against the juvenile. Similarly, the judge was responsible for determining if the juvenile was to be deprived of his liberty. Neither of these officers, the court felt, could properly represent the juvenile at the hearing.

In commitment proceedings, the probate judge and the examining physicians are charged, for all practical purposes, with determining whether the individual before them should be confined in a mental institution. There is no mandatory requirement that anyone protect the rights of the individual.

The decision of the court, in *Lessard, supra* (349 F. Supp. 1078), is exactly in point with the case at bar. The court held that the Wisconsin statutory civil commitment procedures, similar to those in Ohio, were constitutionally defective. The court, in the most comprehensive statement on this subject, traced the history of civil commitment in the United States, the effects upon the liberty and constitutional rights of individuals, and cited medical, legal and psychiatric studies of the commitment process and the defects and shortcomings thereof. In a well-reasoned opinion, the court held that the due-process clause required the appointment of counsel for indigents in civil commit-

ment hearings. The court based its decision upon recent United States Supreme Court definitions of due-process requirements in *Gault, supra* (387 U. S. 1), and *Argersinger* v. *Hamlin* (1972), 407 U. S. 25, and their application to the constitutional problems presented by existing civil commitment proceedings.

It should be noted that the United States Supreme Court in *Schmidt* v. *Lessard*, 414 U. S. 473, 39 L. Ed. 2d 661, vacated the judgment of the District Court, because the court's order granting injunctive relief did not meet the specificity requirements of Rule 65(d) of the Federal Rules of Civil Procedure, and remanded the case to that court for the issuance of a properly appealable order. At this time, the case is still pending before the District Court.

However, the problems pointed out in *Lessard* exist also in Ohio. Although they have not been raised in the present action, the number of constitutional infirmities and their gravity emphasize the need for the protection by counsel at every step in the commitment process, and a summary of such problems is called for.

Ohio's notice and hearing requirements do not mandatorily require personal notice of a hearing to an individual (R. C. 5122.12 and 5122.18), or his presence at a hearing if the court and the examining physicians determine that it is likely to be injurious to him (R. C. 5122.15). Likewise, the Probate Court's unfettered discretion in committing an individual does not provide an adequate record upon appeal for reviewing the grounds for commitment or what burden of proof prompted commitment. Presently, there are no statutory standards for commitment upon which appellate review may be predicated. Grounds for review, however, could be brought out in the record by competent counsel. There is no duty upon the court to explore other less restrictive and possibly more effective alternatives to commitment. Additionally, many petitions for commitment are based upon hearsay evidence and subject to the same abuses in civil commitment hearings which

render such evidence inadmissible in any other civil or criminal proceeding.

In addition to these problems which leave the commitment process open to abuse are the serious deprivations of individual liberty which flow from commitment.

Aside from the obvious deprivation of liberty arising from physical restraints upon a committed individual's freedom, Ohio has imposed numerous statutory restrictions on the mentally disabled.

Indeterminate hospitalization pursuant to R. C. 5122.-15 follows an adjudication of legal incompetency (R. C. 5122.36). Aside from the legal effect the courts may give to this blanket provision, in relation to its effect upon the capacity to contract, devise, and otherwise convey property and enter into agreements, certain specific consequences follow such an adjudication. The adjudication provides an independent basis for the appointment of a guardian (R. C. 2111.01), and requires the head of a hospital to which an incompetent is committed to take possession of the money and valuables on the person of the incompetent (R. C. 5123.42). It also deprives the incompetent of a license to drive an automobile (R. C. 4507.08[B]), and, if the person adjudicated is a licensed professional, his license to practice may be suspended by the body having statutory authority to regulate the profession. A person who has been committed cannot obtain a marriage license in the county where he was committed if he has been found to be an imbecile or insane person (R. C. 3101.06). Such individual is also deprived of his right to vote (R. C. 3503.18), hold elective office (Section 4, Article XV, Ohio Constitution), and serve on a jury (R. C. 2313.06). Additionally, the children of an incompetent may be put up for adoption without the individual's consent (R. C. 3107.06[B][3]).

In addition to these statutory consequences of civil commitment, there are the obvious difficulties which the individual will face in attempting to readjust to life out-

side the institution. The social stigma accompanying commitment in a mental institution will present obstacles to former patients in seeking employment and entering into commercial transactions. See *Lessard, supra* (349 F. Supp. 1078), at 1089. The court, in *Lessard,* quoted from the testimony of Bruce J. Ennis, ACLU, New York City, taken in hearing before the Senate Subcommittee on Constitutional Rights, 91st Congress, 1st and 2d Sessions, that: "* * *in the job market, it is better to be an ex-felon than ex-patient."

In a similar vein, it should be noted that Ohio statutes dealing with psychopathic offenders and persons convicted of sex crimes provide a greater degree of constitutional protection prior to, at and subsequent to hearing to those persons convicted of specified crimes and referred for psychiatric examination for purposes of determining if indefinite commitment is necessary than is provided in noncriminal civil commitment proceedings. It seems incongruous to protect the constitutional rights of those convicted of crimes and subsequently confined to a mental institution and not provide the same or more extensive protection to noncriminals. The Ohio procedure, pursuant to R. C. 5122.15, in effect, punishes noncriminals who are the subject of civil commitment proceedings.

The United States Supreme Court, in *Robinson* v. *California* (1962), 370 U. S. 660, a case holding invalid a state statute imposing criminal penalties for drug addition, at page 666, states:

"It is unlikely that any state at this moment in history would attempt to make it a criminal offense for a person to be mentally ill, or a leper, or to be afflicted with a venereal disease. A state might determine that the general health and welfare require that the victims of these and other human afflictions be dealt with by compulsory treatment, involving quarantine, confinement, or sequestration. But, in the light of contemporary human knowledge, a law which made a criminal offense of such a disease would doubtless be universally thought to be an infliction of cruel

and unusual punishment in violation of the Eighth and Fourteenth Amendments."

Yet, in view of the rights guaranteed criminal defendants and denied individuals in noncriminal civil commitment proceedings pursuant to R. C. 5122.15, the practical effect of the Ohio civil commitment procedures is to penalize the mentally ill and deny them the same protections afforded individuals in criminal proceedings.

This court has previously expressed the sentiment that individuals subject to Ohio's civil commitment procedures are entitled to representation by counsel, although not deciding that issue. *In re Popp, supra* (35 Ohio St. 2d 142). We do so now.

Because of the scope and gravity of the constitutional rights involved and the serious deprivations of liberty resulting from involuntary civil commitment pursuant to R. C. 5122.15, we hold that the due-process clause of the Fourteenth Amendment to the United States Constitution requires that individuals subject to involuntary civil commitment proceedings be advised of their right to be represented by counsel retained by them, or, if they are unable to afford counsel, that counsel will be appointed for them. The right to be represented by counsel must be made available at the earliest stage of the proceedings commensurate with the individual's need for a timely preparation of a defense or advancement of an argument for alternative modes of treatment, preferably upon the filing of an affidavit under R. C. 5122.11 in Probate Court.

We do not, herein, hold that an individual is entitled to the presence of counsel at psychiatric interviews, because of the debate over the efficacy of counsel at such interviews and the possible deleterious effect upon the individual and the examination process. We do hold, however, that counsel must have access to all reports and results of examinations which will be introduced at the commitment hearing.

In the present case, there is no evidence in the record

of an affirmative showing that appellees knowingly and intelligently waived their right to counsel.

For the foregoing reasons, we affirm the judgment of the Court of Appeals granting appellees' writ of habeas corpus and remand the cause to the Probate Court for further proceedings.

*Judgment affirmed.*

O'Neill, C. J., Herbert, Stern, Celebrezze, W. Brown and P. Brown, JJ., concur.

O'Neill, C. J., concurring. One year ago I expressed my view that due process required that indigents involved in involuntary civil commitment proceedings pursuant to R. C. 5122.11 through R. C. 5122.15 be afforded the benefit of counsel. *In re Popp* (1973), 35 Ohio St. 2d 152, 146, 298 N. E. 2d 529, 531 (dissenting opinion). I am, therefore, in agreement with the judgment rendered in this case. However, the importance of the present decision to the administration of Ohio's mental health statutes compels me to delineate exactly the rulings which I believe this court announces today.

The primary holding of this case is that every person subjected to the involuntary commitment procedure established by R. C. 5122.11 through R. C. 5122.15 has the right to be represented by counsel. In the case of an indigent, the court shall appoint counsel at public expense. From this holding there flow several corollary rules. One is that the right to counsel may be waived by the subject of the proceeding, but an alleged waiver will be effective only if the subject, immediately prior to the purported waiver, is advised of his right to counsel. Since waivers of constitutional rights are valid only if knowingly and intelligently made, a waiver of right to counsel in an involuntary commitment proceeding is valid only if the Probate Court expressly finds that the subject is capable of understanding his right to counsel and the effect of a waiver thereof.

Finally, it should be noted that counsel must be afforded a reasonable amount of time to investigate and familiarize himself with his client's case.

HERBERT, STERN and W. BROWN, JJ., concur in the foregoing concurring opinion.