McDUFFIE v. BERZZARINS.

(No. 74-977—Decided July 2, 1975.)

24

*Mr. Alan Yamamoto, Mr. Franklin J. Hickman, Mr. Steven Saltzman* and *Mr. Douglas Rogers*, for petitioner.
*Mr. William J. Brown*, attorney general, and *Mr. Frederick L. Ransier*, for respondent.

CELEBREZZE, J. In *In re Popp* (1973), 35 Ohio St. 2d 142, this court reaffirmed its longstanding position that the remedy of habeas corpus is available only to effect a *release* from illegal confinement. Also, the conclusion that habeas corpus is available when no other remedy exists to vindicate constitutional rights was recognized. See *Freeman* v. *Maxwell* (1965), 4 Ohio St. 2d 4, 6.

Here, petitioner has been unconditionally released from confinement. There is no viable fact distinction which can be made in order to differentiate between the cause before us and *Popp*.

In *Popp*, the syllabus provides:

"Where subsequent to filing a petition for a writ of habeas corpus, petitioner is released from a mental institution by administrative discharge pursuant to R. C. 5122.-21, the petition should be dismissed as moot." 35 Ohio St. 2d 142.

However, our continuing examination of problems in the area of mental health and commitment now leads us to a different conclusion than that which we reached in *Popp*.

Our determination to reach the merits in this case results in part from our concern with the continuing collateral consequences subsequent to release from commitment for

mental illness. See *In re Fisher* (1974), 39 Ohio St. 2d 71, 80-81. Cf. *Sibron* v. *New York* (1968), 392 U. S. 40; *Carafas* v. *LaVallee* (1968), 391 U. S. 234. Also, a decision on the merits in this case will not be a futile exercise since it may affect serious continuing disabilities which are the result of a finding of mental illness, and commitment.

*In re Fisher, supra,* provides that representation by counsel in a civil commitment proceeding is a fundamental constitutional right. Examining the question whether this fundamental constitutional right was waived in the case before us, we have the benefit of guidelines set forth by the United States Supreme Court for waiver of similar rights.

The touchstone of our examination is that a waiver of this sort must be knowingly and intelligently made. Speaking of waiver of counsel, the Supreme Court, in *Johnson* v. *Zerbst* (1938), 304 U. S. 458, 464, said:

"* * * The determination of whether there has been an intelligent waiver of right to counsel must depend, in each case, upon the particular facts and circumstances, surrounding that case, including the background, experience, and conduct of the accused."

Federal waiver standards were amplified to set forth the duty of the trial judge in determining whether the waiver of counsel was intelligent and competent in *Von Moltke* v. *Gillies* (1948), 332 U. S. 708, 723-724:

"* * * To discharge this duty properly in light of the strong presumption against waiver of the constitutional right to counsel, a judge must investigate as long and as thoroughly as the circumstances of the case before him demand. The fact that an accused may tell him that he is informed of his right to counsel and desires to waive this right does not automatically end the judge's responsibility. To be valid such waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter. *A judge can*

*make certain that an accused's professed waiver of counsel is understandingly and wisely made only from a penetrating and comprehensive examination of all the circumstances under which such a plea is tendered.''* (Emphasis added.)

The federal courts, in applying these standards, have adhered to the case-by-case approach enunciated in *Zerbst*, abjuring any hard and fast rules; *e. g.*, *Spanbauer* v. *Burke* (C. A. 7, 1966), 374 F. 2d 67. We adopt the same approach.

In the case before us the commitment hearing was not a record hearing. From the referee's report and the affidavits filed, we are unable to determine whether petitioner knew the possible result of the hearing. Without that knowledge, he gave no intelligent and competent waiver. The record in the Probate Court hearing must show with clarity that the petitioner knew of his right to counsel, or to appointed counsel at state expense if unable to afford counsel, and that he knew of the allowable commitment which could result from the hearing; in short, that he was apprised of all the facts essential to a broad understanding of the whole matter.*

For the foregoing reasons the motion to dismiss the petition is overruled and the writ of habeas corpus is allowed.

*Writ allowed.*

O'NEILL, C. J., HERBERT, CORRIGAN, STERN and P. BROWN, JJ., concur.

W. BROWN, J., dissents.

O'NEILL, C. J., concurring. I concur for the reasons stated in my dissenting opinion in *In re Popp* (1973), 35 Ohio St. 2d 142, at page 146.

---

*Careful examination of the subject of the commitment proceeding, perhaps coupled with an improved waiver form, and initial inquiry directed toward the expert giving the relevant psychological testimony as to the person's competence to waive the assistance of counsel, should be considered as appropriate improvements in this developing area of the law.

HERBERT, J., concurring. My concurrence in *In re Popp* (1973), 35 Ohio St. 2d 142, was prompted by my concern over the lower court's having proclaimed an unwarranted expansion of the issuance of the extraordinary writ of *habeas corpus*. I do not believe courts should begin issuing these writs, in otherwise moot cases, solely because a so-called "public interest" has been declared.

The case of *In re Fisher* (1974), 39 Ohio St. 2d 71, did not present the issue of mootness or involve a discussion of collateral disability. See the concurring opinion in *State v. Wilson* (1975), 41 Ohio St. 2d 236, 238.

WILLIAM B. BROWN, J., dissenting. I dissent, first, from the majority's decision to assume jurisdiction over this appeal where petitioner's release from confinement has rendered his habeas corpus proceeding nonjusticiable (*In re Popp* [1973], 35 Ohio St. 2d 142, syllabus).

Secondly, if petitioner were presently confined and his petition therefore *properly* invoked the jurisdiction of this court, then I would dissent from the majority's decision to apply ordinary criminal law waiver principles to an alleged "mentally ill individual." That term is defined in R. C. 5122.01(A) as follows:

"[A]n individual having an illness which substantially impairs the capacity of the person to use self-control, judgment, and discretion in the conduct of his affairs, and social relations, and includes 'lunacy,' 'unsoundness of mind,' 'insanity,' and also cases in which such lessening of capacity for control is caused by such addiction to narcotics, sedatives, alcohol, or stimulants as to make it necessary for such person to be under treatment, care, supervision, guidance, or control."

Although, the majority refers to "our continuing examination of problems in the area of mental health and commitment," I consider its opinion to be yet another snare for the alleged mentally-ill individual. Henceforth, the absence of counsel at a commitment hearing will cause no

28

concern if "waiver" can be established by a "rational and reasonable man" standard.

I find it ludicrous to even contemplate a waiver under such circumstances, because anyone who would waive counsel at such a hearing is probably incapable of understanding his perilous circumstances, and *if* so incapacitated, should be supplied with counsel as a matter of course.