RETZ, APPELLEE, *v.* RETZ, APPELLANT.
FULLER, APPELLEE, *v.* FULLER, APPELLANT.

(Nos. 5691 and 5746—Decided April 19, 1978.)

*Mr. Donald F. Harker, III,* for appellee Christine Retz.
*Mr. Steven M. Cox,* for appellants Randall Retz and Nathaniel Fuller.

*Per Curiam.* The appeal in Case No. 5691 (*Retz v. Retz*), is from an order of the Domestic Relations Court finding the defendant in contempt of court for failing to comply with an order to make child support payments. A sentence of incarceration in jail was imposed for such failure. The proceedings were not recorded and an agreed statement of the record was approved and certified to this court pursuant to the Appellate Rules.

The appeal in Case No. 5746 (*Fuller* v. *Fuller*) was consolidated with Case No. 5691 because the factual and legal issues of both are the same. In *Fuller,* the only record is the transcript of the docket and journal entries and a statement of facts set out in the appellant's brief. There is no agreed statement of the record as in the *Retz* case. No one appeared or filed a brief on behalf of the appellee. A brief discussion and disposition of *Fuller* appears *infra.*

The agreed statement of facts in the *Retz* case is as follows:

"1. On August 20, 1976, Plaintiff-Appellee, Christine Retz (hereinafter Appellee), was granted a divorce from Defendant-Appellant, Randall Retz (hereinafter Appellant). Appellant was ordered to pay child support to Appellee in the amount of $17.50 per week and one per cent of each payment to the Montgomery County Bureau of Support as a service charge, for a total weekly payment of $17.68.

"2. On June 30, 1977, a hearing was held to allow Appellant to show cause why he should not be held in contempt for non-payment of child support. Appellee was represented by counsel from the Legal Aid Society of Dayton at said hearing. Appellant appeared without counsel.

"3. Evidence adduced at the June 30, 1977, hearing showed that Appellant had made no child support payments since the divorce was granted. Appellant testified that he had not earned enough money since the divorce to pay child support. The matter was continued to July 27, 1977, for disposition and costs were assessed against Appellant.

"4. On July 27, 1977, Appellant appeared without counsel. Appellee was represented by counsel from the Legal Aid Society of Dayton. Appellant was adjudged in contempt of court for failure to pay child support and sentenced to the Montgomery County Jail for ten days. Five days of said sentence were suspended. Appellant began serving his sentence at 5:00 P.M., July 27, 1977.

"5. On July 28, 1977, Appellant, represented by counsel from the Office of the Montgomery County Public Defender, filed his Notice of Appeal to the Montgomery County Court of Appeals. The execution of Appellant's sentence was thereupon suspended during the pendency of his appeal.

"6. At all times relevant to the issues herein subsequent to the Final Judgment and Decree of Divorce and prior to the filing of his Notice of Appeal, Appellant was unrepresented by counsel and stated that he was unable to obtain counsel because of his indigency. At no time did Appellant waive counsel."

The agreed facts indicate that at the hearing and sentence in contempt appellant was without counsel. It does not appear that he requested counsel or that he was advised of any right to counsel. Subsequent to the judgment appellant stated he was unable to obtain counsel because of his indigency. He never expressly waived counsel.

The issue presented is whether the incarceration of the appellant for a violation of a civil order to pay for child support was contrary to the Constitutions of both the United States and the state of Ohio where the appellant appeared without counsel and without funds to employ counsel. The execution of the sentence of commitment was suspended by the trial court pending appeal.

This private action was initiated by the appellee-wife, custodian of the children. She was represented by the Legal Aid Society of Dayton, the local part of the federal network of legal services under the Legal Services Corporation Act. After the sentence was imposed, the appellant-husband was represented by the Office of the Montgomery County Public Defender under the Ohio provision for indigents.

The appellee's counsel by way of a brief accepted the "philosophy" of its parent corporation that the ends of justice is best served when legal assistance is provided for indigents and declined to take a position adverse to that of the appellant when the civil proceeding may result in the contemnor's incarceration. No one appeared on behalf of the trial court or on behalf of other public authorities that may be affected by a decision in the case.

This court is confronted with a constitutional issue on which there is no adversary. Both parties agree on the facts and the law, a novel situation, which suggests that this court must look to the announcements of the Supreme Court of Ohio without regard to the "philosophy" of counsel, which in this situation appears to overlook the position of the trial court as well as the welfare of the children and the complainant.

The three assignments of error, based upon the provisions of the United States and Ohio Constitutions, will be discussed in the order listed in the appellant's brief.

### 1.

We conclude that the right to counsel *in criminal prosecutions,* guaranteed by both Constitutions and affirmed by *Argersinger* v. *Hamlin* (1972), 407 U. S. 25, has no application to private actions, initiated by private parties, even though such actions may result in incarceration for a failure to obey a court order. The Sixth Amendment to the United States Constitution applies only "in all criminal prosecutions." Section 10, Article I, of the Ohio Constitution has a similar provision among a series of rights in criminal proceedings and extends the right to counsel to "the party *accused,*" a reference that has no application to a civil action. *In re Calhoun* (1976), 47 Ohio St. 2d 15, 17; *Beach* v. *Beach* (1955), 99 Ohio App. 428; *In re Neff* (1969), 20 Ohio App. 2d 213. There is no merit to the first assignment of error.

### 2.

The second assignment of error is based upon the Fourteenth Amendment to the Constitution of the United States, that no state shall "deprive any person of life, liberty, or property, without due process of law***." There can be no doubt that in a civil case every person is entitled to be represented by counsel. The question is whether the state must guarantee that right, advise a civil defendant of his right to counsel and provide counsel at public expense where the nature of the proceeding is such that it may result in incarceration if an order of the court has not been obeyed.

In the instant case, the contempt proceedings resulted from a failure to support minor children. Similar questions arise in a multitude of other civil situations, notably orders in equitable cases, enforcement of judgments, and summary and preliminary actions during trial in any one of which a refusal to obey an order may result in a fine or imprisonment, or both. It is the comprehensive nature of the issue involved here that prompted this court to remark at the outset that neither the children, the trial court or the public authorities, who would be required to provide counsel in such civil actions, were

represented. It may well be that the public expense involved is a deterring cause for the decisions that skirt or otherwise avoid a direct answer.

Proceedings against juveniles for offenses and those against convicted defendants for a violation of probationary orders are clothed in all the protection of the criminally accused and must be distinguished from civil contempt proceedings. *State* v. *Timson* (1974), 38 Ohio St. 2d 122.

*In re Popp* (1973), 35 Ohio St. 2d 142 and *In re Fisher* (1974), 39 Ohio St. 2d 71, both hold that in an involuntary civil commitment proceeding in the Probate Court based upon insanity or mental illness the person involved, if indigent, is entitled under the Due Process Clause to appointed counsel. The language used in these opinions is sufficiently broad to include all civil contempt situations where incarceration is involved. If we accept such *dicta,* it would be necessary to reverse the instant order. The only distinction is that a mental condition is described as involuntary, a condition that is not present in all civil contempt proceedings.

More recently, in a case from this county, the Supreme Court affirmed a dismissal of proceedings similar to the instant case that arose out of habeas corpus action because the remedy was inappropriate. *In re Calhoun* (1976), 47 Ohio St. 2d 15.

In the *Calhoun* case the Supreme Court points out "great factual differences" between criminal and non-criminal proceedings and states, at page 17:

"The only *noncriminal* situation to which this court has applied *Argersinger* is involuntary civil commitment proceedings undertaken pursuant to R. C. 5122.15. *In re Fisher* (1974), 39 Ohio St. 2d 71."

This *Per Curiam* statement can only be accepted as a caution suggesting a limitation upon earlier statements of the court. An interest in the uniform and orderly operation of justice throughout the state suggests acceptance of that limitation until the Supreme Court creates a broader exception involving voluntary situations which would of necessity incorporate all varieties of civil contempt proceedings.

This caution also appears in *Juidice* v. *Vail* (1977), 430 U. S. 327, in which the Supreme Court of the United States

applied the rule of federal abstention in a collection case in which a collateral action was initiated in the federal courts; however, as in the habeas corpus actions in Ohio, the *Vail* case represents another type of inappropriate action and a failure to assert a direct appeal when the opportunity was available. Here we find a direct appeal.

The second assignment of error presents a major constitutional problem under the Due Process Clause. The volume of such proceedings in the domestic relations courts also presents a public economic burden of equal magnitude, rivaling that experienced in criminal cases.

There is a major distinction between criminal proceedings, brought by the state for its protection on behalf of all the people and prosecuted by agents with all the resources of the state, and private civil proceedings that may provoke contempt, but in which the state is no more than indirectly concerned. This is not to say that the government has no interest in children who are without income for their support or citizens whose rights are violated; however, in such situations the initiation and thrust of civil relief rests exclusively with those involved and, unless authorized by statute—as in criminal offenses based upon nonsupport—the power and resources of the state are not utilized in any manner other than as in any other civil action. In the first situation, the public reaps the protection and benefit of criminal actions and must pay the piper; in the latter, a civil action is initiated to enforce a private obligation and the benefit derived is for a private purpose. The extent to which economic relief is extended to individuals to aid them in prosecuting or defending civil disputes is a legislative question and not an issue that has as yet been recognized as within the mandatory constitutional guarantee of due process in civil cases.

We conclude from the references in the *Calhoun* case to *In re Green* (1962), 369 U.S. 689, and to *Taylor* v. *Hayes* (1974), 418 U. S. 488, and the quotation repeated above that the Supreme Court of Ohio has not recognized a public duty arising out of the Due Process Clause to guarantee and to provide counsel for indigents for proceedings in civil contempt arising out of a failure to obey a court order even though some limited incarceration may result.

The second assignment of error is rejected.

### 3.

The third assignment of error relies upon the Equal Protection Clause under the Fourteenth Amendment to the United States Constitution. This argument is dependent upon the second assignment of error as to what is available within the guarantee of due process and is not bolstered by the existence of a statute making it a criminal offense to fail to support one's minor children.

There are differences inherent in life and the liberty of free choice and they vary in degree between every person or corporation. The fact that they exist and will never be removed, if we are to remain free, does not justify a resort to the Fourteenth Amendment unless the denial of a right is by the state and the denial relates to a protection provided or made available under the law.

The third assignment of error is not well taken.

The judgment in Case No. 5691 is affirmed.

In *Fuller* v. *Fuller,* a contempt proceeding was initiated by the Montgomery County Bureau of Support in which it is recited that the appellant was $4,133.16 in arrears on child support payments. The court, *sua sponte,* ordered the defendant to appear to show cause why he should not be held in contempt for non-payment of child support. The matter was heard by a referee and the order and sentence was approved by the court on October 12, 1977, imposing a fine of $500 and a sentence of ten days to be served in the county jail. In lieu of paying the fine, the defendant was required to serve it out at the rate of $10 per day. The effective jail time imposed amounts to 60 days. The sentence was suspended pending appeal. There is no indication in the record that appellant was represented by counsel until after the sentence, or that he waived the presence of counsel.

The assigned errors are the same as those in Case No. 5691 and the reasons and conclusions of the court in the consolidated case will not be repeated here. The errors are rejected and the judgment is affirmed.

*Judgment affirmed.*

SHERER, P. J., MCBRIDE and KERNS, JJ., concur.