STATE ex rel. D. W., Relator,

v.

C. Duane HENSLEY et al., Respondents.

STATE ex rel. E. B., Relator,

v.

C. Duane HENSLEY et al., Respondents.

Nos. 60823, 60834.

Supreme Court of Missouri,
En Banc.

Dec. 18, 1978.

Joseph A. Simanek, Legal Aid of Western Missouri, Kansas City, for relator.

John D. Ashcroft, Atty. Gen., Reginald Turnbull, Asst. Atty. Gen., Jefferson City, for respondents.

FINCH, Judge.

Separate petitions for a writ of habeas corpus and for declaratory judgment[1] were filed in this court by D.W. and E.B. These petitions, filed pursuant to § 202.850,[2] requested release from custody under previous commitments to the Department of Mental Health pursuant to which they had been placed at St. Joseph State Hospital No. 2. We ordered the two cases consolidated.

Except for dates and names, the petitions are identical. They allege that on January 10, 1977, as to E.B. and on April 25, 1977, as to D.W., an application for an order of involuntary hospitalization of a person who is mentally ill was filed in the Probate Court of Jackson County. In each instance, a notice of hearing on the application was personally served on the person whom the petition sought to have hospitalized and an attorney was appointed to represent each subject. Thereafter, hearings were held after which an order of hospitalization was entered pursuant to § 202.807.[3] The orders recite that the patient appeared in person and by attorney and that after a hearing at which one of the witnesses was a licensed physician, the court found that the subject of the hearing was mentally ill, as defined by law, and was in need of custody, care and treatment in a hospital for the mentally ill. It further found that the person had not voluntarily sought such hospitalization and that due to such illness the person lacked sufficient insight and capacity to make responsible decisions with respect to such hospitalization.

The petitioners did not avail themselves of the right of appeal to the circuit court pursuant to § 202.807.7 nor did they subsequently institute a proceeding in the Probate Court of Jackson County for reexamination of the orders of hospitalization as authorized by § 202.837.[4]

In these proceedings petitioners seek release from custody plus associated relief on the basis that § 202.807, under which they were committed, is unconstitutional under various provisions of the Missouri and United States Constitutions. The reasons assigned are that the statute is vague and overly broad, its notice requirements are deficient, it neither permits nor requires use of the rules of evidence, it requires proof by only a preponderance of the evidence, it does not require that incarceration be in the least restrictive setting appropriate and it does not require mandatory periodic review hearings.

On July 14, 1978, we ordered writs of habeas corpus to issue. Respondents filed returns thereto which assert that their custody of petitioners is pursuant to valid orders of the Probate Court of Jackson County, that § 202.807 is constitutional on its face and as applied and that habeas corpus relief is inappropriate for the reason that petitioners have available a remedy pursuant to § 202.837. Thereafter, no evidentiary hearing was requested by either party and the case was set for oral argument.

The briefs filed herein disclose that on July 31, 1978, E.B. was placed on out-patient care and subsequently on August 18, 1978, was released from the care and custody of the Department of Mental Health. On August 11, 1978, D.W. was released from the care and custody of the Department of Mental Health. Both releases were pursuant to § 202.827.

---

1. In their brief petitioners withdraw their request for a declaratory judgment.

2. RSMo Cum.Supp.1975.

3. All references to § 202.807 are to RSMo Cum. Supp.1975.

4. All statutory references are to RSMo 1969 unless otherwise indicated.

Relators, by their petitions for writ of habeas corpus, sought to challenge their custody by respondents and to effect their release. That custody has been terminated by their release pursuant to § 202.827. As a result, the petitions have become moot. At issue is whether we should dismiss them for that reason or whether we should in our discretion retain and decide them as we may do with cases which present issues of great importance which may arise again. *Boone v. Danforth*, 463 S.W.2d 825 (Mo. banc 1971); *O.H. v. French*, 504 S.W.2d 269 (Mo.App.1973).

Petitioners argue in their reply brief that we should retain and decide these cases because they might subsequently be recommitted pursuant to § 202.807. However, the recent session of the General Assembly enacted a new Missouri civil commitment law, H.C.S.S.B. 651,[5] effective January 2, 1979, which repeals § 202.807. Consequently, commitments on and after that date will be pursuant to the provisions of the new statute which differs in numerous respects from the present statute. Therefore, neither petitioners nor others will be subject to commitment under § 202.807.[6]

Petitioners next argue that we should retain and decide these cases because otherwise they will suffer adverse consequences from the orders of commitment even though they now have been released from custody. They suggest that any attempt to commit them under the new law will be influenced by the prior commitments of which they now complain and that records of the prior commitments will be used in any subsequent proceeding for civil commitment. We are not persuaded that this will be so. They cite *In re Ballay*, 157 U.S.App. D.C. 59, 482 F.2d 648 (1973), but no Missouri cases supporting the proposition asserted are cited. Relators also claim that future employment in various fields will be affected adversely. The only allegation in the petitions for habeas corpus which might be said to relate to this contention is the allegation that petitioners, as a result of the adjudication and confinement, suffer the stigmatization of being adjudicated and labeled as mentally ill. As previously noted, petitioners did not request an evidentiary hearing and no evidence has been received. Therefore, there is no record to support petitioners' contentions. They have attached to their reply brief an appendix which purports to consist of copies of documents said to show that future employment in certain areas will be affected adversely. Such copies are not evidence in this case and we do not consider them. If petitioners wanted these documents considered, a hearing should have been requested and evidence offered.

Under these circumstances we have concluded not to retain and decide these cases. The petitions for writ of habeas corpus are dismissed as moot and the writs heretofore issued are quashed.

MORGAN, C. J., BARDGETT, RENDLEN and SIMEONE, JJ., and ALDEN A. STOCKARD, Special Judge, concur.

SEILER, J., dissents in separate dissenting opinion filed.

DONNELLY, J., not sitting.

SEILER, Judge, dissenting.

The majority concludes that this case is moot because the petitioners have been released and no collateral consequences of commitment have been demonstrated. I respectfully disagree for two reasons. First, if such a hearing were required, the proper course would be to remand for a hearing rather than to dismiss. Second, a number of collateral consequences of commitment do exist which can be recognized by this court without resort to an evidentiary hearing.

---

**5.** 1978 Mo.Legis.Serv. 83 (Vernon) (codified as §§ 202.010–.225 RSMo).

**6.** The new statute further provides in § 202.220 that "[t]he commitment of any person pursuant to section 202.807 RSMo Cum.Supp.1975, shall terminate not more than one year after January 2, 1979, unless further detention and treatment is authorized pursuant to section 202.145 or pursuant to the provisions of chapter 475, RSMo." Section 202.173 thereof also authorizes any person detained pursuant to the act to apply for a writ of habeas corpus.

At the time these petitions were filed and our writ issued, both petitioners were in the custody of the Department of Mental Health. They requested release from custody, the expungement of the records of their commitment and an award of attorney's fees. As such, an evidentiary hearing on the collateral consequences of confinement was neither necessary nor appropriate. The return was filed July 20, 1978, admitting custody and asserting the constitutionality of the commitment statutes. On July 27, 1978, the cases were consolidated and set for hearing and argument on September 26, 1978. It was not until August 11 and 18 that the petitioners were released.[1] We should not treat petitioners' failure to ask for an evidentiary hearing at that late juncture (which would have caused the September 26 setting to be stricken and would have delayed the hearing in this court for an indefinite time) as though petitioners were thereby conceding there is no support for their contention of stigmatization or are somehow estopped to assert to the contrary. If, in order to grant relief, the court finds that evidence of the collateral consequences of commitment must be adduced, it should give petitioners a new opportunity to request an evidentiary hearing, and remand the case to a master. If such consequences can be shown, this court should then decide the case.

I do not believe, however, that a hearing is necessary in order for this court to recognize that there are many collateral consequences to an involuntary commitment. I believe this court may take judicial notice of the social stigma which attaches. *Cf. Martin v. Star Cooler Corp.*, 484 S.W.2d 32, 35 (Mo.App.1972); *Feinberg v. Pfeiffer Co.*, 322 S.W.2d 163, 169 (Mo.App.1959). In *Lessard v. Schmidt*, 349 F.Supp. 1078, 1088–89 (E.D.Wis.1972)[2] the district court discussed the statutory and social consequences of hospitalization without any reference to

proof thereof having been made. So too, in *In re Curry*, 152 U.S.App.D.C. 220, 470 F.2d 368, 371 n. 5 (1972) and *Justin v. Jacobs*, 145 U.S.App.D.C. 355, 449 F.2d 1017, 1018–20 (1971) the District of Columbia circuit recognized that the constitutionality of commitment procedures was not moot despite the patient's release from custody where collateral consequences *might* follow. It gave no indication that an evidentiary hearing was held on these consequences.

As stated by the Ohio Supreme Court, "there are the obvious difficulties which the individual will face in attempting to readjust to life outside the institution. The social stigma accompanying commitment in a mental institution will present obstacles to former patients in seeking employment and entering into commercial transactions." *In re Fisher*, 39 Ohio St.2d 71, 313 N.E.2d 851, 857 (1974). The Ohio court relied on *Fisher* and on *Sibron v. New York*, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968) in *McDuffee v. Berzzarins*, 43 Ohio St.2d 23, 330 N.E.2d 667, 669 (1975) to state:

"Our determination to reach the merits in this case results in part from our concern with the continuing collateral consequences subsequent to release from commitment for mental illness. [citations omitted]. Also, a decision on the merits in this case will not be a futile exercise since it may affect serious continuing disabilities which are the result of a finding of mental illness, and commitment."

An example of one of these consequences, the effect on the former patient's ability to engage in future activities, can be found in the very forms which this court requires law students to fill out in order to register as a law student. Question No. 25 requires the applicant report whether he or she has been "committed, confined or treated in any institution for mental illness."

1. The mere fact of petitioners' release from custody does not deprive us of jurisdiction in light of the fact that petitioners were in custody when the petitions were filed. *Justin v. Jacobs*, 145 U.S.App.D.C. 355, 449 F.2d 1017, 1020–21 (1971); *Cf. Carafas v. LaVallee*, 391 U.S. 234, 238–40, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968).

2. *Vacated*, 414 U.S. 473, 94 S.Ct. 713, 38 L.Ed.2d 661 (1974), *clarified*, 379 F.Supp. 1376 (E.D.Wis.1974), *vacated*, 421 U.S. 957, 95 S.Ct. 1943, 44 L.Ed.2d 445 (1975), *reinstated*, 413 F.Supp. 1318 (E.D.Wis.1976).

Additionally, if the petitioners wish to live in the District of Columbia or other jurisdictions which have statutory restrictions on a mental patient's right to exercise certain rights, the fact of prior commitment will affect the former patient adversely. *See In re Ballay,* 482 F.2d at 651–53.

It is apparent that in addition to the social stigma noted above, a number of other consequences of commitment remain. The majority rejected petitioners' argument, supported by *In re Ballay,* 482 F.2d at 651–652, that prior commitments will influence later commitments, by stating that no Missouri cases so holding had been cited. However, we need look no further than our own statutes for proof. A provision of the present commitment statute, § 202.807(3), RSMo 1969, states in relevant part, that in the case of an application to the court for the involuntary commitment of a person:

".  .  . If an order of hospitalization is made, the medical witness shall make out *a detailed history of the case,* as far as practicable, stating the diagnosis or nature of the mental condition, its duration, *former treatment of the patient,* and all other particulars relating to the patient and his mental condition on forms acceptable to the division of mental health. *This history shall be attached to the order of hospitalization to be delivered to the facility.* The court in its discretion may order further examination as to the mental condition of the proposed patient and may continue the hearing until the report of such further examination is made to the court." (emphasis added).

A provision of the new commitment procedures, as set out in § 202.195 of H.C.S. S.B. 651 (1978), provides:

"1. *The fact of admission and all information and records compiled, obtained, prepared or maintained by the mental health coordinator, mental health or retardation facility,* or otherwise in the course of providing services to either voluntary or involuntary patients at public or private mental health or retardation facilities shall be confidential. *Information and records may be disclosed only* : .

"(1) As authorized by the patient, his guardian, or if the person is a minor by his parent or other person legally entitled to his custody;

"(2) *To persons or agencies responsible for providing health care services to such patients* ;

.     .     .     .     .

"(5) *To the courts as necessary to the administration of this act* ;

"(6) *To law enforcement officers or public health officers only to the extent necessary to carry out the responsibilities of their office* ; .  .  .

.     .     .     .     .

"(8) Pursuant to an order of a court or administrative agency of competent jurisdiction;

.     .     .     .     .

"3. *Nothing contained in this act shall limit the rights of discovery in judicial or administrative procedures as otherwise provided for by statute or rule.*" (emphasis added).

Clearly, then, under either the old or the new law, prior commitment can be a relevant factor in either the decision to commit or the determination of treatment. It will always hang over the former patient, despite his release from custody, unless the record of commitment is expunged.

In light of the numerous consequences of commitment discussed above, no evidentiary hearing is required in order to conclude that the probability that collateral consequences of the petitioners' commitment will result is great. The questions raised are important ones of due process and equal protection which may arise again yet evade review because the petitioners have been released. As such the petitions should not be dismissed as moot. *Boone v. Danforth,* 463 S.W.2d 825, 827 (Mo.banc 1971). I dissent.