### In re MOSER.

[Cite as *In re Moser* (1997), 124 Ohio App.3d 117.]

Court of Appeals of Ohio,
Second District, Clark County.

No. 96–CA–0123.

Decided Nov. 14, 1997.

118

*Daniel J. Martin*, for appellant.

*Richard F. Heil, Jr.*, for appellee ADAMHS.

GRADY, Judge.

Samuel A. Moser appeals from a judgment of the probate court ordering his commitment to the Eastern Miami Valley ADAMHS Board/In–Patient Unit, Mental Health Services for Clark County, Inc. ("ADAMHS") upon the probate court's finding that Moser was mentally ill and subject to court-ordered hospitalization.

In October 1996, a therapist with Mental Health Services for Clark County, Inc. filed an affidavit with the probate court alleging that Moser was mentally ill and in need of hospitalization for that illness as he posed a grave and imminent risk to the substantial rights of himself or others. The probate court ordered

Moser's detention, scheduled a hearing on the affidavit, and appointed an attorney to represent Moser.

At the outset of the hearing, the following exchange occurred between Moser and the court:

"THE COURT: Okay. And Mr. Heil's here on behalf of the Petitioners. Mr. Kavanagh is here on behalf and has been appointed to represent Mr. Moser and let me address that issue first.

"Mr. Moser, you have the right to have a lawyer and have the duty [sic] to have a lawyer assist you.

"MR. MOSER: A real lawyer, I have the right to a real lawyer.

"THE COURT: Mr. Moser, Mr. Kavanagh is a licensed lawyer to practice in the State of Ohio.

"MR. MOSER: He's a—

"THE COURT: He's been appointed to represent you. If you don't wish to have him, that's your choice.

"MR. MOSER: He's a, he's a puppet of the state.

"THE COURT: He's—

"MR. MOSER: He's a puppet of you. He's a puppet of him.

"THE COURT: Do you wish to have Mr. Kavanagh assist you?

"MR. MOSER: No, I do not.

"THE COURT: Mr. Kavanagh, you can sit in the room, if you would, and just remain silent; then, if he has any questions he can refer to you at the appropriate time."

Later in the proceedings, the following exchange occurred regarding Moser's counsel:

"MR. MOSER: Okay. Do I—this is, this—do I have the right to receive a lawyer that is willing to work for me?

"THE COURT: Yes, sir.

"MR. MOSER: Okay. This lawyer is unwilling to notarize affidavits of my, my rights as a, as an American citizen for my freedom of religious worship. I want him to notarize a statement that states my religious beliefs. And this lawyer here was unwilling to notarize statements that expressed my religious beliefs as an American citizen.

"THE COURT: Okay.

"MR. MOSER: That's so I could give them to the Court. So, I felt violated—

"THE COURT: Mr.—

"MR. MOSER: I was given a lawyer that was not willing to work for me.

"THE COURT: Mr. Moser, how a lawyer chooses to represent a client is somewhat up to the lawyer. I don't begin to tell Mr. Kavanagh what he has to do or what he can't do."

In addition, at other points in the proceeding, the court asked Moser whether he wanted Attorney Kavanagh to ask questions or make statements in Moser's behalf. Moser rejected these offers and instead proceeded *pro se* throughout the hearing.

On October 31, 1996, the court filed a "Judgment Entry of Commitment," in which it ordered Moser to undergo in-patient hospitalization at ADAMHS for a period not to exceed ninety days. The court stated in its judgment entry:

"Upon clear and convincing evidence, the Court finds that Samuel Moser is a mentally ill person subject to hospitalization by court order as defined by Section 5122.01(B)(4). The court does make a finding that the least restrictive alternative available consistent with treatment goals is inpatient hospitalization."

Moser filed a timely notice of appeal of the court's judgment and order of commitment, and now presents four assignments of error. We note preliminarily that at the end of his initial brief, Moser included a "Request for Oral Argument" in a manner similar to which a party might endorse a jury demand on a pleading. Loc.App.R. 3 and 3.1 require that a request for oral argument must be made by written motion. Moser's request for oral argument fails to comply with that requirement. Therefore, we will consider the appeal to be submitted for our disposition on the basis of the briefs. See *Brown v. Good Samaritan Hosp. & Health Care Ctr.* (Mar. 21, 1997), Montgomery App. No. 15959, unreported, 1997 WL 165431; *State v. Lloyd* (May 17, 1996), Montgomery App. No. 15210, unreported, 1996 WL 257440.

### First Assignment of Error

"The court erred by not determining whether appellant was competent to waive his right to counsel, and by not providing appellant an opportunity to obtain substitute counsel, so that appellant was denied counsel at the hearing."

Involuntary civil commitment hearings are governed by R.C. 5122.15, which provides that such hearings "shall be conducted in a manner consistent with this chapter and with due process of law." Further, "[t]he respondent shall be informed that the respondent may retain counsel. * * * If the respondent is unable to obtain an attorney, the respondent shall be represented by court-appointed counsel. If the respondent is indigent, court appointed counsel * * *

shall be provided as an expense under section 5122.43 of the Revised Code." R.C. 5122.15(A)(4).

A person's right to counsel at a civil commitment proceeding is afforded not only by statute, but also by constitutional guarantees of due process of law.

"In an involuntary civil commitment proceeding, undertaken pursuant to R.C. 5122.15, the due-process clause of the Fourteenth Amendment to the United States Constitution requires that individuals subject to such proceedings be advised of their right to be represented by counsel retained by them, or if they are unable to afford counsel that counsel will be appointed for them at public expense; if such individuals are incapable, at the time, of understanding their right to counsel in such involuntary civil commitment proceedings under R.C. 5122.15, the Probate Court shall appoint counsel to represent each indigent person who is so alleged to be mentally ill; such right to be represented by counsel must be made available at the earliest stage of the proceedings commensurate with the individual's need for a timely preparation of a defense or advancement of an argument for alternative modes of treatment, preferably upon the filing of an affidavit in Probate Court under R.C. 5122.11." *In re Fisher* (1974), 39 Ohio St.2d 71, 68 O.O.2d 43, 313 N.E.2d 851, paragraph two of the syllabus.

The record reflects that Moser was advised of his right to counsel and that, due to his indigency, counsel was appointed to represent him. However, the court apparently viewed Moser's complaints concerning his court-appointed counsel and his statements that he did not wish Attorney Kavanagh to assist him or speak on his behalf as a waiver by Moser of his right to counsel. As a result, the court instructed Attorney Kavanagh to remain silent and permitted Moser to proceed *pro se.* ·

As ADAMHS correctly notes in its brief, "the provisions of R.C. 5122.15(A) * * * do not entitle an indigent person to court-appointed counsel of his choice." *State v. Bruton* (1985), 27 Ohio App.3d 362, 364, 27 OBR 457, 459, 501 N.E.2d 651, 654. However, the issue presented by this assignment of error is not whether Moser had the right to select the counsel that the court would appoint. Instead, the issue is whether on this record, the probate court could find that Moser had knowingly and intelligently waived his right to counsel.

"A person subject to commitment proceedings, pursuant to R.C. 5122.15, may waive assistance of counsel; such waiver is valid only where a comprehensive examination is made to determine that the person has sufficient knowledge of the particular facts and circumstances of his individual case and that he possesses sufficient competence to understandingly and wisely make the waiver decision."

*McDuffie v. Berzzarins* (1975), 43 Ohio St.2d 23, 72 O.O.2d 13, 330 N.E.2d 667, syllabus.

The record fails to demonstrate that the court conducted the comprehensive examination of Moser required by *McDuffie* to determine whether Moser's waiver of his right to counsel was knowingly and intelligently made. In permitting Moser to proceed *pro se* without determining whether his waiver was valid, while at the same time instructing Moser's court-appointed counsel to remain silent, the court deprived Moser of the right to assistance of counsel guaranteed by the Constitution and by R.C. 5122.15(A)(4). The court erred in ordering Moser's commitment without affording him a right to counsel.

■ We cannot agree with ADAMHS that Moser suffered no prejudice from the deprivation of his right to counsel. Indeed, the prejudicial effect of permitting an alleged mentally ill individual to represent himself at a civil commitment proceeding, if not patently obvious, is demonstrated by a review of the record here.

Without counsel, Moser was ineffective in his attempts to challenge the conclusions drawn by the psychiatrist called by ADAMHS, who opined that Moser is schizophrenic and should be committed. Without speculating as to the validity of Moser's claims that he had feigned mental illness in order to qualify for social security disability benefits and that he was not afflicted with schizophrenia but with severe attention deficit disorder, it is apparent from the record that such claims, if accurate, could have been more effectively presented at the hearing had Moser had the benefit of counsel. Finally, counsel may well have assisted Moser in convincing the court that if Moser was committed, that alternative was less restrictive than in-patient hospitalization and consistent with the treatment goals appropriate for Moser. See R.C. 5122.15(E).

The first assignment of error is sustained.

### Second Assignment of Error

"The court erred by failing to advise appellant he was not required to make a statement on his own behalf which may cause him to incriminate himself and so violate his Fifth Amendment rights."

■ R.C. 5122.15(A)(12) provides that "[t]he respondent has the right, but shall not be compelled, to testify, and shall be so advised by the court."

On several occasions during the hearing, the court explained to Moser that he would be given an opportunity to speak or to make a statement in his behalf. However, Moser was not advised, as mandated by the statute, of his right to not testify. Although not sworn, Moser did make a lengthy statement at the hearing regarding his alleged mental illness and his concerns about medications.

The Ohio Supreme Court has emphasized the importance of adhering to the statutory requirements in civil commitment proceedings:

"It is well recognized that an involuntary civil commitment constitutes a significant deprivation of liberty requiring due-process protection. *Addington v. Texas* (1979), 441 U.S. 418, 425, 99 S.Ct. 1804, 1809, 60 L.Ed.2d 323, 330–331; *In re Burton* (1984), 11 Ohio St.3d 147, 151, 11 OBR 465, 468, 464 N.E.2d 530, 535. R.C. Chapter 5122 sets forth specific procedures to be followed when a person is committed to a mental hospital, whether voluntarily or involuntarily. When commitment is against a person's will, it is particularly important that the statutory scheme be followed, so that the patient's due-process rights receive adequate protection." *In re Miller* (1992), 63 Ohio St.3d 99, 101, 585 N.E.2d 396, 399.

The court committed prejudicial error by failing to advise Moser that he was not required to testify at his civil commitment hearing. The second assignment of error is sustained.

### Third Assignment of Error

"The probate court's finding that inpatient hospitalization was the least restrictive alternative and order to involuntarily commit appellant constituted state action which caused Mr. Moser to be subjected to involuntary medication, and the court committed prejudicial error by not considering the appellant's religious objections to medication, thus violating the First Amendment right to freedom of religion as guided by the Restoration of Religious Liberties Act."

### Fourth Assignment of Error

"The appellant also contends that the side affects of psychotropic or neuroleptic medication violate his right to life because such medications cause physical conditions which ultimately shorten life span and are violative of his right to pursuit of happiness."

These two assignments of error focus on certain constitutionally based objections to forced medications and on Moser's efforts to interject those concerns into his civil commitment proceeding. Even assuming that these claims are properly before us, it is well settled that a reviewing court will not reach constitutional issues unless absolutely necessary. See *In re Miller, supra,* 63 Ohio St.3d at 110, 585 N.E.2d at 405.

Our decision to sustain Moser's first two assignments of error requires a reversal of the court's judgment and order of commitment. That reversal renders the matters raised in Moser's third and fourth assignments of error moot, and we decline to address them. See App.R. 12(A)(1)(c).

Conclusion

The first two assignments of error having been sustained, the probate court's judgment and order of commitment will be reversed. Further, because any finding of mental illness carries collateral effects that require correction when error is involved, the cause will be remanded to the probate court with our mandate to enter an order expunging its October 31, 1996 judgment entry of commitment. See *In re Forney* (Oct. 10, 1997), Greene App. No. 96–CA–15, unreported, 1997 WL 630090.

*Judgment accordingly.*

BROGAN and WOLFF, JJ., concur.