{¶ 83} On this appeal from convictions following a jury trial before Judge Patricia A. Cleary, I dissent. I would sustain Tierney's claim that he was denied his constitutional right to counsel when the judge failed to ensure his waiver of counsel was knowing and voluntary and, while I would overrule his sufficiency challenge, I would find all other assignments moot.
{¶ 84} The majority has abused both the law and the facts in order to justify its departure from long-settled principles, finding that the requirements for showing a constitutionally valid waiver expressed in Von Moltke v. Gillies,[1] consistently approved and applied in this court,[2] the Ohio Supreme Court,[3] and the United States Supreme Court,[4] are not binding, but are merely suggestions. The majority author, who also authored the opinion in State v. Jackson,[5]
now claims that the Von Moltke requirements, while apparently still the best method of determining whether a waiver is valid, are unnecessary here. The rationale for this conclusion stems from the majority's opinion that Tierney showed the requisite understanding in his properly-formatted, relatively sophisticated and well written pro se motions. The majority seeks to adopt a new rule of law that now allows a judge to determine a valid waiver of counsel through a subjective assessment of the background, experience, and conduct of the accused[.]
{¶ 85} I agree that the Von Moltke doctrine does not require a judge to follow a formulaic line of inquiry in determining whether an accused understands his waiver of counsel; the inquiry, like the determination, should be tailored to the circumstances of each case. Nevertheless, the understanding necessary to execute a valid waiver should not be so flexible; the accused must still demonstrate that he appreciates the nature of the charges, the available sentences, possible defenses and mitigating circumstances, and all other facts essential to a broad understanding of the whole matter.[6]
{¶ 86} The circumstances of the case help determine the length and thoroughness of the investigation required but, in every case, a judge must assure himself that each accused has the same basic understanding. Furthermore, in order to overcome the presumption against waiver, this understanding must affirmatively appear in the record.[7] Although there might be some debate over the nature of facts essential to a broad understanding of the whole matter[,] an accused who exhibits no understanding of the available sentences for the charged offenses is incapable of making a valid waiver under any interpretation of the standard.
{¶ 87} The majority also gives lip service to the strong presumption against waivers of counsel, yet concludes, without explanation, that the record rebuts that presumption. There is, however, nothing in the record showing that Tierney appreciated the nature of the charges or the possible sentences, much less evidence showing his broad understanding of the whole matter. The majority admits that the judge made no inquiry into Tierney's understanding of the waiver he sought, and the record does not show that his background, experience, or conduct was of any relevance in showing his understanding. Instead, the majority relies solely on his pro se filings as the necessary evidence, although it fails to explain how these motions evidence his understanding of anything of import; the opinion gives nothing but superficial conclusions on this issue.
{¶ 88} It is ironic that, while the majority finds that the judge adequately assured herself that Tierney understood the consequences of his waiver, it then overrules Tierney's second assignment of error by pointing out that his motion to suppress testimony was not properly filed. This motion is included in the papers transmitted to this court under App.R. 9, as are several other pro se motions submitted by Tierney, but not file-stamped. Although I agree that these motions were improperly filed, it is also evident in the record that the judge was aware of his attempts to file the motions and that she did rule on a number of them, despite their deficiencies.[8]
{¶ 89} Regardless of whether the judge had a duty to warn Tierney that his filings were defective, or whether her actions in ruling on some of the motions led him to believe that his filings were adequate to preserve his rights on appeal, one thing is clear; she was well aware, prior to accepting his waiver, that he was failing to abide by applicable procedural rules, and that those failures were preventing him from presenting a defense and protecting his rights. While an accused need not show competence in legal matters in order to represent himself, Tierney's inability even to properly file court papers certainly should have prevented the judge from relying on the improper filings as evidence of his knowing and intelligent waiver, without conducting any inquiry whatsoever into his understanding of the criminal judicial process.
{¶ 90} The record includes unfiled motions with filed journal entries ruling upon them, as well as motions bearing file stamps that were not ruled upon. No motion that bears a file stamp also bears a certificate of service, while at least some of the unfiled motions appear to have been sent to the prosecuting attorney. There is little doubt that Tierney failed to serve any motion made prior to September 13, 2000, upon the prosecuting attorney, because his Writ of Habeas Corpus filed on that date contains the query, What is the Prosecutor Attorney's address? The fact that Tierney was incapable of properly serving or filing any of his motions should have alerted the judge to the necessity of further inquiry into his requested waiver of counsel, and is the first of many reasons the majority is utterly unjustified in relying on those motions as evidence of his appreciation and understanding of the legal processes[.]
{¶ 91} The majority claims that Tierney's motions were properly-formatted, relatively sophisticated and well written[,] and were thus sufficient to show his knowing waiver. While I disagree with the suggestion that the ability to include party names and a case number at the top of a page[9] is of significant import in determining a valid waiver of counsel, I note that Tierney's motions appear to have been modified from filings made during his self-representation in a traffic incident in Hawaii. Indeed, in some of the typewritten forms the words In the District Court First Circuit State of Hawaii are crossed out and replaced by Cuyahoga County Common Pleas Court, the word Hawaii is crossed out and replaced with Ohio as the party plaintiff, and a series of case numbers beginning with the abbreviation TR are crossed out in favor of the lower court case number here.
{¶ 92} Not only did Tierney use forms gleaned from his defense of traffic offenses, the record also shows that he quoted the same arguments in his motions. The record contains an unfiled page from a brief protesting a contempt citation[10] in a Hawaii traffic court, which asserts the right to a jury trial using the same language and citations used in his motion here.
{¶ 93} The majority ignores the fact that the Motion for Speedy Trial by Jury was unnecessary, and that it in fact showed that Tierney likely had no understanding of the nature of the charges, the available punishments, or his defenses. Tierney's motion cites United States Supreme Court cases establishing a right to a jury trial, points out that the right attaches only to serious offenses, and states the constitutional test for determining whether a charged offense is serious. The motion shows no recognition of the fact, which should have been explained to him at his preliminary hearing, that the felony charges made it unnecessary for him to request a jury trial because that right would be granted unless he waived it.[11] The generic, boilerplate nature of this motion and the fact that it was utterly unnecessary indicates that Tierney had no appreciable understanding of criminal procedure, but that he was simply doing his best to mimic legal behavior. The motion betrays a failure to understand not only the posture of his case, but a fundamental failure to understand the seriousness of the charges against him. Even if one interprets this motion in the broadest and most liberal manner, nothing within it can be used to show Tierney's understanding of the charges against him in order to overcome the strong presumption against waiver.
{¶ 94} Although this motion made no reference to his constitutional or statutory speedy trial rights outside of its title, it also was unnecessary for him to insist upon those rights, again because they attach without request and are enforceable unless affirmatively waived. I note, however, that in ruling on the motion the judge referred to it as a motion for speedy trial only, and purported to grant the motion by scheduling trial within ninety days of his arrest.[12] This is the sort of cynical, faux ruling that typifies the proceedings here. Tierney's motions were sometimes filed, sometimes responded to, sometimes re-interpreted, and sometimes ignored, all at the whim of the judge and prosecutor, who could have stricken or objected to any of the motions at any time because of improper filing or service. The judge allowed Tierney to represent himself despite being aware of his incompetence, and even encouraged continued filings by purporting to grant a motion for speedy trial that was unnecessary and had never been made, and purporting to rule on other motions that were unnecessary or had not been properly filed or served.
{¶ 95} The majority also specifically mentions Tierney's Notice of Appeal on Excessive Bail, his Motion to Challenge Array of Grand Jurors, and his Writ of Habeas Corpus, as representative of his relatively sophisticated and well written motions. Again, none of these motions was served on the prosecutor,[13] and the judge ignored them without any objection or further inquiry from Tierney. Each motion, however, shows his failure to understand the proceedings and his inability to defend himself and, as noted supra, none of them can be relied upon to affirmatively show his knowing, intelligent waiver and overcome the presumption against such waiver.
{¶ 96} The Notice of Appeal on Excessive Bail purports to do what its title implies; notify the common pleas court that Tierney is appealing the amount of bail. The appeal (Cuyahoga App. No. 78372) was dismissed on August 7, 2000 for failure to file a praecipe, and reconsideration was denied even after the praecipe was filed because the bail ruling was not a final appealable order. The proper method of challenging bail is through a habeas corpus petition.[14]
{¶ 97} In his Motion to Challenge the Array of Grand Jurors Tierney informed the judge of his right to challenge the selection of the grand jury, both generally and specifically, as set forth in Crim.R. 6(B). The judge ignored the motion and Tierney took no steps to follow up on it under either Crim.R. 6(B)(1) or 6(B)(2). Such challenges require access to records concerning the selection and exclusion of jurors and the ability to interpret a complex web of statutory requirements.[15]
Even a relatively simple challenge to an individual juror[16] would require records of the jurors' names and backgrounds, and the record does not show that Tierney had these records, nor does it suggest that he had the knowledge or ability to obtain them. Indeed, it would seem extremely difficult for an incarcerated defendant[17] to be capable of gathering and analyzing the information necessary to challenge the makeup of a grand jury and this motion was, in practical reality, utterly useless.
{¶ 98} Tierney's September 13, 2000 Writ of Habeas Corpus alleged a right, under Sup.R. 8(A), to be indicted within sixty days of his arrest, and requested that he be released because he had been incarcerated since July 15, 2000. The judge and the majority not only fail to note that the petition did not conform to statutory requirements governing habeas petitions,[18] but that his citation to Sup.R. 8(A) refers to a rule that has not existed since 1997. The currently applicable provision is Sup.R. 39(B), the proper request is a motion to dismiss, and the time period runs from the date the case is bound over to the grand jury[19] and not the date of arrest.
{¶ 99} In a cover letter accompanying the July 26, 2000 motions, Tierney asserted his waiver of counsel and implored the judge please do not deny me access to the courts. This phraseology uses language notably present in prison inmates' civil rights cases,[20] and suggests that he was attempting to transfer some experience in this area to his criminal defense. Although the use of language more aptly applied to civil rights litigation does not foreclose the possibility that Tierney had the necessary understanding of his criminal case, it certainly raises questions concerning that understanding and does not support a finding of waiver without further inquiry.
{¶ 100} A criminal defendant's desire to waive counsel, no matter how sincerely or insistently stated, does not itself validate the waiver, but instead only triggers the judge's duty to inquire whether the desire is intelligently held. Moreover, as noted in State v. Richards,[21] a pro se defendant who wishes to evidence his knowing waiver through a written motion and end further inquiry should at least have the legal acumen necessary to reference Von Moltke. Such a requirement would be far easier to apply and review and would lead to fairer, more predictable results than the unexplained, and inexplicable, approach employed by today's majority. While I understand the desire to find that Tierney received his just desserts, an appellate court must seek rules that lead to fair results for all defendants, not ad hoc determinations based on notions of rough justice.
{¶ 101} Tierney's motions do not show an understanding sufficient to extinguish the judge's duty of inquiry and overcome the presumption against waiver. Merely because he filed numerous pro se motions that appear to use lawyer-like language is not equivalent to an understanding of the law.[22] The majority's facile conclusion that these documents were relatively sophisticated and well written ignores the facts that they were irrelevant and ineffectual, that none of them was properly filed or served, and that none of them in any way indicates that Tierney had the understanding necessary to uphold a waiver of counsel. The motions do not show any relevant understanding of the severity of the charges or the sentences he faced, and in fact demonstrate a number of misapprehensions concerning the proceedings.
{¶ 102} I would sustain the first assignment, overrule the third assignment, and remand this case for further proceedings.
[1] (1948), 332 U.S. 708, 723-724, 68 S.Ct. 316, 92 L.Ed. 309.
[2] State v. Watson (1998), 132 Ohio App.3d 57, 64, 724 N.E.2d 469; State v. Richards (Sept. 20, 2001), Cuyahoga App. No. 78457, appeal not allowed (2002), 94 Ohio St.3d 1429, 761 N.E.2d 46; State v. Jackson (2001), 145 Ohio App.3d 223, 227, 762 N.E.2d 438.
[3] State v. Gibson (1976), 45 Ohio St.2d 366, 74 O.O.2d 525,345 N.E.2d 399, paragraphs one and two of the syllabus; McDuffie v. Berzzarins (1975), 43 Ohio St.2d 23, 25-26, 72 O.O.2d 13,330 N.E.2d 667.
[4] Patterson v. Illinois (1988), 487 U.S. 285, 298,108 S.Ct. 2389, 101 L.Ed.2d 261.
[5] n. 2, supra.
[6] Von Moltke, supra.
[7] State v. Bayer (1995), 102 Ohio App.3d 172, 179,656 N.E.2d 1314.
[8] There is no record showing that the judge accepted the filings pursuant to Crim.R. 12(B), and she failed to note the dates of those filings or ensure that they were stamped by the clerk in accordance with that rule.
[9] See Loc.R. 8(A) of the Court of Common Pleas of Cuyahoga County, General Division.
[10] The document indicates that Tierney was cited for contempt in the Hawaii traffic court on the charge that the judge saw him pick his nose and fling a bugger [sic] at the bench[.] This is the relatively sophisticated individual whom the majority believes was capable of making an intelligent waiver of counsel without any inquiry from the judge.
[11] Crim.R. 5(A)(5).
[12] The judge made no pretense of granting his motion for a jury trial.
[13] Including his July 26, 2000 Motion for Discovery.
[14] Jenkins v. Billy (1989), 43 Ohio St.3d 84, 538 N.E.2d 1045.
[15] See Crim.R. 6(B); R.C. Chapter 2313; R.C. 2939.02, 2939.03; State v. Davis (1978), 60 Ohio App.2d 355, 364-366, 14 O.O.3d 315,397 N.E.2d 1215 (failure to record exclusions); State v. Buell (1985),29 Ohio App.3d 215, 217-218, 29 OBR 260, 504 N.E.2d 1161 (cross-section challenge requires showing of detailed elements).
[16] R.C. 2313.42.
[17] The fact that Tierney was incarcerated throughout this period should have affected the judge's determination, but apparently was not considered. The judge should have questioned his notions of what self-representation entailed and pointed out that his incarceration would seriously hinder his ability to gather factual and legal information.
[18] R.C. 2725.04.
[19] This occurred on July 24, 2000.
[20] See, e.g., Lewis v. Casey (1996), 518 U.S. 343,116 S.Ct. 2174, 135 L.Ed.2d 606.
[21] (Sept. 20, 2001), Cuyahoga App. No. 78457.
[22] (Emphasis added.) Id.