128

Sheffel, Appellant, *v.* Sulikowski, Supt., Appellee.

[Cite as Sheffel v. Sulikowski (1980), 62 Ohio St. 2d 128.]

(No. 79-1184—Decided April 30, 1980.)

Mr. *Edward A. Icove,* for appellant.

Mr. *William J. Brown,* attorney general, Mr. *Michael L. Cioffi* and Mr. *David A. Belinky,* for appellee.

*Per Curiam.* As a preliminary matter, we note that the appellee claims that this matter was not properly before the Court of Appeals pursuant to a writ of habeas corpus. This court, however, has recognized this extraordinary writ as a means to challenge confinement imposed through the involuntary commitment process under R. C. 5122.15. *In re Klepper* (1977), 49 Ohio St. 2d 211; *McDuffie* v. *Berzzarins* (1975), 43 Ohio St. 2d 23; *In re Fisher* (1974), 39 Ohio St. 2d 71; see, also, R. C. 5122.30. Appellee's contention is, therefore, groundless.[1]

Turning to the merits of this cause, we must begin with the statutory scheme provided by R. C. Chapter 5122. R. C. 5122.15(B) provides that:

"Unless, upon completion of the hearing the court finds *clear and convincing evidence* that the respondent is a mentally ill person subject to hospitalization by court order, it shall order his discharge immediately."[2] (Emphasis added.)

The phrase "mentally ill person subject to hospitalization by court order" is defined in R. C. 5122.01(B) as "a mentally ill person who, because of his illness:

"(1) Represents, a substantial risk of physical harm to

---

[1] We note that this appeal is not moot because of our holding in *In re Klepper* (1977), 49 Ohio St. 2d 211, 212.

[2] This burden of presenting clear and convincing evidence has recently been held to be mandated by the Fourteenth Amendment to the United States Constitution in a state involuntary commitment proceeding. *Addington* v. *Texas* (1979), 441 U. S. 418, 60 L. Ed. 2d 323.

himself as manifested by evidence of threats of, or attempts at, suicide or serious self-inflicted bodily harm;

"(2) Represents a substantial risk of physical harm to others as manifested by evidence of recent homicidal or other violent behavior or evidence of recent threats that place another in reasonable fear of violent behavior and serious physical harm;

"(3) Represents a substantial and immediate risk of serious physical impairment or injury to himself as manifested by evidence that he is unable to provide for and is not providing for his basic physical needs because of his mental illness and that appropriate provision for such needs cannot be made immediately available in the community; or

"(4) Would benefit from treatment in a hospital for his mental illness and is in need of such treatment as manifested by evidence of behavior that creates a grave and imminent risk to substantial rights of others or himself."[3]

Thus, it was necessary for the party seeking commitment herein to show by clear and convincing evidence that the appellant, Sheffel, fell within the definition provided in R. C. 5122.01(B). We hold, as a matter of law, that this burden was not met by the state.[4]

The only medical witness who testified for the state, Dr. Nannapaneni, began working at the hospital four days prior to the hearing and saw appellant only twice. Although the doctor concluded that appellant represented a risk of physical harm to

---

[3] R. C. 5122.11 states in part, that "[t]he affidavit shall contain an allegation setting forth the *specific* category or categories under division (B) of section 5122.01 of the Revised Code upon which the jurisdiction of the court is based and a statement of alleged facts sufficient to indicate probable cause to believe that the person is a mentally ill person subject to hospitalization by court order." (Emphasis added.) The affidavit in the instant case had categories corresponding to R. C. 5122.01(B)(2) and (4), marked as the specific categories. The facts supporting this included alleged instances of "irritation, hostility, and grandiosity" exhibited by Sheffel. Because the testimony in this cause did not meet the burden of proof in any of the four categories it is unnecessary for us to determine whether the two marked categories were the only legal theories under which the state could seek commitment.

[4] The definition of "mental illness" in R. C. 5122.01(A) also reflects a high standard of proof. It requires "a *substantial* disorder of thought, mood, perception, orientation, or memory that *grossly impairs* judgment, behavior, capacity to recognize reality, or ability to meet the ordinary demands of life." (Emphasis added.)

himself or to others, the facts elicited during his testimony, particularly on cross-examination, were not supportive of this conclusion. The doctor stated that he did not believe appellant to be suicidal, nor did he indicate that there was a risk of self-inflicted injury. Thus, appellant could not be found to be subject to hospitalization under the criteria of R. C. 5122.01(B)(1). Subsection (B)(2) of the statute was not met either, because the doctor testified that appellant had displayed no violent behavior, was not regarded as dangerous and, indeed, was cooperative and non-hostile. There was, however, some evidence that appellant fell within portions of R. C. 5122.01(B)(3). The doctor testified that appellant, because of memory lapses, needed some supervision, which apparently was not readily available within the community. The testimony failed to demonstrate, however, that appellant was unable to provide for his basic physical needs. There was no evidence to indicate that appellant created a "grave and imminent risk" to the rights of anyone as required by R. C. 5122.01(B)(4). In fact, the doctor stated that he did not feel that appellant was in need of further hospitalization.

The doctor also testified that he had not observed any psychotic disorders or symptoms in appellant, that appellant's thought processes were normal, and that appellant's records indicated no prior history of mental illness. The only facts cited tending to prove any real mental infirmity involved an incident occurring sometime in June 1979 when appellant asked to see the records of another patient, claiming to be an inspector. This incident along with the doctor's unsupported conclusions, however, could not establish by clear and convincing evidence that appellant was subject to hospitalization under the statutory definition. The United States Supreme Court has recently stated that:

"At one time or another every person exhibits some abnormal behavior which might be perceived by some as symptomatic of a mental or emotional disorder, but which is in fact within a range of conduct that is generally acceptable. Obviously such behavior is no basis for compelled treatment and surely none for confinement. However, there is the possible risk that a factfinder might decide to commit an individual bas-

ed solely on a few instances of unusual conduct. Loss of liberty calls for a showing that the individual suffers from something more serious than is demonstrated by idiosyncratic behavior." *Addington* v. *Texas* (1979), 441 U. S. 418, 60 L. Ed. 2d 323, 331.

Accordingly, the judgment of the Court of Appeals is reversed and the cause is remanded to that court.[5]

*Judgment reversed.*

CELEBREZZE, C. J., HERBERT, W. BROWN, P. BROWN, SWEENEY, LOCHER and HOLMES, JJ., concur.

---

[5] Several constitutional arguments were raised in this cause, but because of our resolution of this matter, we need not reach these issues. This court will not decide constitutional questions unless absolutely necessary. *State, ex rel. Hofstetter,* v. *Kronk* (1969), 20 Ohio St. 2d 117, 119.