Respondent-appellant, Sandy G. Kuehne, appeals an order of the Butler County Court of Common Pleas, Probate Division, finding him to be a mentally ill person subject to hospitalization under R.C. Chapter 5122 and committing him to the Pauline Warfield Lewis Center (the "Lewis Center") for a period not to exceed ninety days.
The record shows that in June 1997, a police officer from the city of Hamilton Police Department signed an Application for Emergency Admission of appellant to the Fort Hamilton Hughes Memorial Hospital. The application stated that police officers responding to appellant's residence found appellant "dirty, smelly, talking non-stop." The application also stated that when the fire department went into appellant's residence, using breathing gear due to the terrible odor emanating from appellant's residence, it found rotten food throughout the apartment as well as stacked on the stove, which was turned on. Apparently, appellant has a compulsive drive to hoard food, which eventually rots, wherever he may be, including in his residence. Both upstairs tenants were evacuated due to the odor and the conditions and the building was evacuated and closed up. Appellant subsequently voluntarily admitted himself to the Fort Hamilton Hughes Memorial Hospital.
On June 24, 1997, appellant was evicted from the above residence for failure to comply with clean up orders from the city of Hamilton Health Department (the "health department"). The record shows that similar actions were taken by the health department in September and December 1997 and May 1998 regarding subsequent residences of appellant. At each and every residence of appellant, the health department found an "excessive amount of garbage, refuse and other material which is generating an extreme odor * * * [and which] constitutes a health hazard and a public nuisance * * *." The health department also found each and every residence of appellant to be "unfit for human habitation."
On May 12, 1998, appellant was arrested for disorderly conduct, breaking and entering, and resisting arrest. The arrest stemmed from appellant's attempt to re-enter the residence from which he had just been evicted. Appellant was subsequently examined by Dr. Roger H. Fisher, a clinical psychologist. On May 18, 1998, Dr. Fisher filed an affidavit pursuant to R.C Chapter 5122 which stated that appellant was a mentally ill person subject to hospitalization by court order because he represented a substantial risk of physical harm to himself and others, would benefit from treatment in a hospital for his mental illness, and was in need of such treatment. Dr. Fisher's findings were mainly based on appellant's manic behavior, his inability to provide for his basic physical needs, and his refusal to take medication.
On May 28, 1998, a full evidentiary hearing (the "commitment hearing") was held before a court-appointed magistrate. By judgment entry of commitment filed May 29, 1998, the magistrate found that appellant was a mentally ill person subject to involuntary hospitalization and ordered that he be committed to the Lewis Center for a period not to exceed ninety days. Appellant subsequently filed objections to the magistrate's judgment entry. A hearing on the objections was held before the trial court on June 22, 1998 and the matter taken under advisement. By entry filed August 28, 1998, the trial court adopted the magistrate's judgment entry of commitment. On September 16, 1998, appellant filed a notice of appeal and moved to stay all proceedings pending disposition of the appeal. While appellant's motion to stay was taken under advisement, it apparently was never ruled upon.[1]
On appeal, appellant raises two assignments of error. However, before we address appellant's assignments of error, we need to determine whether this appeal is properly before us. Relator-appellee, Butler County Board of Mental Health (the "Board"), argues that appellant's appeal should be dismissed as moot because of the expiration of both of the magistrate's judgment entries as adopted by the trial court, and appellant's failure to appeal the magistrate's second judgment entry. The Board also asserts that appellant has "left the outpatient mental facility to which he was committed without permission of either the [Board] or the [trial court]" and that he "has apparently left Butler County * * * and the jurisdiction of the [trial court] * * *."
Appeals are not allowed for the purpose of settling abstract questions, but only to correct errors injuriously affecting defendants; there must generally be a "present interest" in the appeal. Ohio Domestic Violence Network v. Pub. Util. Comm.
(1992), 65 Ohio St.3d 438, 439. Here, appellant arguably possesses no "present interest" in the resolution of this appeal since he has apparently left not only the mental health facility to which he was committed, but also Butler County.
However, "appeals from involuntary commitment entries are not moot because any involuntary commitment order is a collateral disability since `[a] permanently recorded judicial declaration that appellant was incarcerated for mental illness carries a stigma * * * [which] * * * affects employment as well as personal and social life.'" In re Smith (4th Dist. Sept. 29, 1993), Nos. 92CA1561, 1568, 1993 Ohio App. LEXIS 5057, at *3, citing toSheffel v. Sulikowski (1980), 62 Ohio St.2d 128, overruled on other grounds in Youngs v. Rogers (1981), 65 Ohio St.2d 27, 28-29, fn.1, and In re Klepper (1977), 49 Ohio St.2d 211. "A finding of mentally ill by the probate court is a finding of status—i.e. it is not a reflection of an act completed; * * * precisely because it is a matter of continuing status, legislation * * * is designed to provide periodic review of the status to assure that once labeled, a person is not continually so stigmatized absent further judicial determination." In re Miller (5th Dist. June 29, 1990), No. CA-2739, 1990 Ohio App. LEXIS 2790, at *2.
In addition, a court may rule on an otherwise moot case where the issues are capable of repetition, yet evading review. Stateex rel. Plain Dealer Publishing Co. v. Barnes (1988), 38 Ohio St.3d 165, paragraph one of the syllabus. A case is capable of repetition where there is a reasonable expectation that the same complaining party, that is, appellant, will be subjected to the same action again. State ex rel. Beacon Journal Publishing Co. v.Donaldson (1992), 163 Ohio St.3d 173, 175.
The present appeal challenges the order of involuntary commitment. Because involuntary commitment constitutes a collateral disability, and because there is evidence that appellant suffers from a mental illness that has required hospitalization and there is no evidence that appellant has recovered from his mental illness, we find that the present appeal is not moot. Appellant's appeal is thus properly before us.
Appellant's first assignment of error reads as follows:
 THE PROBATE COURT ERRED TO THE SUBSTANTIAL PREJUDICE OF THE RESPONDENT BY FINDING THE RESPONDENT TO BE A MENTALLY ILL PERSON SUBJECT TO INVOLUNTARY HOSPITALIZATION PURSUANT TO R.C. 5122.01(B).
At the end of the August 28, 1998 commitment hearing, the magistrate found that the evidence presented supported the involuntary commitment of appellant under R.C. 5122.01(B)(3) and (4). Appellant argues that the record failed to establish by clear and convincing evidence that he is a mentally ill person subject to involuntary hospitalization by court order under R.C.5122.01(B)(3) or (4).
R.C. 5122.01(B) defines a "mentally ill person subject to hospitalization by court order" as a mentally ill person who, because of his illness:
 (1) Represents a substantial risk of physical harm to self as manifested by evidence of threats of, or attempts at, suicide or serious self-inflicted bodily harm;
 (2) Represents a substantial risk of physical harm to others as manifested by evidence of recent homicidal or other violent behavior, evidence of recent threats that place another in reasonable fear of violent behavior and serious physical harm, or other evidence of present dangerousness;
 (3) Represents a substantial and immediate risk of serious physical impairment or injury to self as manifested by evidence that the person is unable to provide for and is not providing for the person's basic physical needs because of the person's mental illness and that appropriate provision for those needs cannot be made immediately available in the community; or
 (4) Would benefit from treatment in a hospital for his mental illness and is need of such treatment as manifested by evidence of behavior that creates a grave and imminent risk to substantial right of others or himself.
The state must establish one of the foregoing four criteria by clear and convincing evidence. Clear and convincing evidence is "that measure or degree of proof which is more than a mere `preponderance of the evidence,' but not to the extent of such certainty as is required `beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." Cross v. Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus.
A trial court must use a "totality of the circumstances" test "to determine whether an alleged mentally ill person is subject to hospitalization under R.C. 5122.01(B)." In re Burton (1984),11 Ohio St.3d 147, paragraph one of the syllabus. Factors to be considered by the court in a commitment hearing include, but are not limited to:
 (1) whether, in the court's view, the individual currently represents a substantial risk of physical harm to himself or other members of society; (2) psychiatric and medical testimony as to the present mental and physical condition of the alleged incompetent; (3) whether the person has insight into his condition so that he will continue treatment as prescribed or seek professional assistance if needed; (4) the grounds upon which the state relies for the proposed commitment; (5) any past history which is relevant to establish the individual's degree of conformity to the laws, rules, regulations and values of society; and (6) if there is evidence that the person's mental illness is in a state of remission, the court must also consider the medically suggested cause and degree of the remission and the probability that the individual will continue treatment to maintain the remissive state of his illness should he be released from commitment.
Id. at 149-150.
Appellant argues that his compulsive hoarding of food wherever he lives, the resulting evictions from his residences for health code violations, and his infrequent bathing, while unpleasant and annoying, do not rise to the level necessary to justify involuntary commitment under either R.C. 5122.01(B)(3) or (4). In essence, appellant argues that the evidence presented at the commitment hearing indicated no more than that he is a nuisance, an annoyance, and a bad neighbor, "but that [this] is not a sufficient reason to haul him off to a mental hospital."
Appellant is correct that a person alleged to be mentally ill cannot be involuntarily confined pursuant to court order merely because others find his appearance or conduct bothersome or annoying. In re Slabaugh (1984), 16 Ohio App.3d 255, paragraph one of the syllabus. A review of the record clearly shows, however, that appellant's behavior went well beyond mere annoyance or bothersomeness and that there was ample evidence to support appellant's involuntary commitment under R.C. 5122.01(B)(3) and (4).
At the commitment hearing, the magistrate had before him the testimony of Dr. Fisher, the licensed clinical psychologist who examined appellant following appellant's arrest; Dr. Michael Miller, a psychiatrist at the Board who evaluated appellant six days before the hearing; Dr. Jeffrey Smalldon, a clinical and forensic psychologist who first met appellant in June 1996 and who assessed him seven days before the hearing; and Nancy Morgan, a crisis specialist at the CAPS Forensic Center and a professional clinical counselor who evaluated appellant while he was in jail as to his need to be hospitalized. Morgan and Drs. Fisher and Miller testified on behalf of the Board while Dr. Smalldon testified on behalf of appellant. Also before the magistrate were the report of appellant's then treating physician, Dr. Braumiller, and the testimony of two police officers, a private investigator, and a sanitarian working for the health department.
James Dalzell works for the health department as a sanitarian and inspects residences and investigates nuisance complaints. Dalzell testified that he personally inspected appellant's apartment on 220 Sycamore Street, in Hamilton, Ohio in June and July 1997. The record shows that the health department received complaints that the apartment was filthy, had old food, garbage, and waste, and that a terrible stench emanated from it. Dalzell testified that the apartment was declared uninhabitable due to the unsanitary conditions and the debris in the apartment. Dalzell stated that appellant was eventually evicted from the residence for not maintaining the property in a safe and sanitary condition. Dalzell also stated that appellant lived in three different residences within a year. The record shows that appellant was evicted from three different residences, including the one at 220 Sycamore Street, for health code violations.
Paul Davis, a police officer for the city of Hamilton, testified that the Hamilton Police Department receives numerous complaints about appellant "wandering into the street, picking up garbage * * *." Davis testified that appellant "picks up hubcaps, any trash that may be along the street. He's crossing the street, something falls out of his shopping cart, a piece of trash, he will stop traffic no matter what time of day to get it. No matter how much traffic is there." Davis described appellant as "very intelligent at times," and as "very paranoid." Davis testified that appellant believes there is a conspiracy against him in the police department and "by the CIA * * *, the FBI, the government, the judge." Davis also testified that after he arrested appellant on May 12, 1998, he let appellant go back into his residence, which was then on 328 Ludlow Street in Hamilton, to get a shirt. Davis testified that "[d]ue to the stench of the house [Davis] made it about two feet in before [he] almost vomited." When appellant failed to come out of the house, Davis went through the house looking for appellant. Davis described the interior of appellant's residence as "[g]arbage or trash, approximately waist deep throughout the house. Very strong stench that * * * would gag you, make it very hard to breathe. Just trash from all over." Davis testified that he had also seen appellant's residence at 220 Ludlow Street. Davis described that residence as having "[t]rash and old food approximately waist high everywhere. You have to walk through it to get from one room to the another."
Calvin Wagers, also a police officer for the city of Hamilton, testified that when appellant's residence at 328 Ludlow Street was cleaned, after appellant had been evicted, a three foot high and three to four foot wide pile of garbage was taken out of the residence.
All three doctors, as well as Dr. Braumiller in his report and Morgan, agreed that appellant was a mentally ill person although their diagnosis as to his illness slightly differed. All three doctors as well as Dr. Braumiller and Morgan agreed that appellant had little to no insight into his illness and that he does not think that he needs any type of treatment.
Dr. Fisher diagnosed appellant as a "very scattered manic psychotic man" with extremely poor judgment and no insight into his behavior and his impact on others. Dr. Fisher testified that "perceiveration" was a significant symptom of appellant's illness. Dr. Fisher defined perceiveration as appellant's great difficulty to switch away from things that concern him deeply. Dr. Fisher explained that appellant was very wrapped up with the same topics and that he could not "derail long enough" to talk about something else. Dr. Fisher stated that appellant expresses the same concerns over and over again and that as a result, he cannot have any sort of psychological break, which in turn makes appellant very uncomfortable. An example of appellant's perceiveration was shown when, given an opportunity to express himself at the end of the hearing, appellant expressed, in a somewhat rambling manner, the same concerns over and over again as to his arrest.
Dr. Fisher opined that appellant was a mentally ill person subject to involuntary hospitalization under R.C. 5122.01(B)(3) and (4). Dr. Fisher explained that appellant's illness was a long term illness that was dangerous to appellant inasmuch as appellant was getting himself into trouble for not complying with police orders, and was incapable of providing for his basic needs such as bathing, eating proper meals, and living in a clean environment safe from pestilence, fire hazards, and people breaking in and victimizing him. Dr. Fisher testified that appellant has a great difficulty relating to reality in an efficient manner and that he is unable to appreciate in an appropriate way other people's motives. Dr. Fisher explained that appellant believes the entire community is against him trying to take control of his money, and that certain attorneys who are part of that plot are working against him instead of on his behalf. Dr. Fisher opined that appellant needed to be treated in a hospital as an inpatient.
Dr. Miller diagnosed appellant as suffering from either manic depression, bipolar illness, or schizophrenia. Dr. Miller testified that appellant's illness was characterized by loss of touch with reality, loss of train of thought, and paranoia. Appellant told Dr. Miller that he was being hospitalized because he was Jewish, the police had been plotting against him, his prior attorney had given $100 to someone to destroy his apartment, and the judge and the city were part of the plot. Dr. Miller testified that appellant had become several times unable to care for his basic needs such as keeping a sanitary home, and that appellant had a recurring pattern of getting into trouble with others and the police by either becoming provocative or by getting involved in a tussle. Dr. Miller testified that appellant's paranoia grossly impairs his judgment and his capacity to recognize reality and to meet the ordinary demands of life. Dr. Miller testified that appellant was a current danger to himself and potentially to others. Dr. Miller opined that appellant needed to be treated in a hospital in an inpatient setting. Dr. Miller testified that an outpatient setting was not appropriate for appellant based upon appellant's lack of insight into his illness and his history of poor compliance with follow-up. Dr. Miller also testified he was concerned that appellant's paranoia might escalate to violent outbursts against himself or others.
Nancy Morgan testified that when she evaluated appellant, he was very delusional and paranoiac. Appellant told Morgan that "the entire legal law enforcement system in Butler County [was] being set up to make false charges against him" and that the judges, the CIA, and the FBI were part of that plot. Appellant also told Morgan that he did not need medication, that he was not mentally ill, and that "his house was [not] filthy, he was just a messy housekeeper." Morgan testified that appellant was unable to take care of his basic needs and that his impaired judgment prevented him from recognizing dangerous behaviors such as walking in the middle of a street to get something. Morgan opined that appellant needed to be hospitalized as an inpatient.
Dr. Smalldon testified on behalf of appellant. While Dr. Smalldon agreed that appellant was a mentally ill person who had interpersonal difficulties, he disagreed that appellant fit any of the criteria of R.C. 5122.01(B). Dr. Smalldon disagreed that appellant was incapable of providing for his needs. Dr. Smalldon stated that while appellant was maybe not providing for his needs "in the way that the rest of us would," Dr. Smalldon was unaware of anything suggesting appellant had been unable to provide for his basic physical needs. Dr. Smalldon also disagreed that appellant's mental illness created a grave and imminent risk to himself or others and referred to a 1998 hospital chart which noted that appellant did not present a risk to himself or to others. Dr. Smalldon agreed, however, that while in a hospital, appellant was in a structured environment which provided him with shelter and food. Dr. Smalldon opined that a reference, in a 1998 hospital record, that appellant was hoarding food under his bed while being hospitalized, was a symptom of appellant's mental illness. Dr. Smalldon agreed that living in unsanitary conditions could pose some health risk to an individual.
The report of appellant's treating physician, Dr. Braumiller, was admitted into evidence. The report states that appellant's mental illness, diagnosed as bipolar manic type, grossly impairs his judgment and behavior inasmuch as appellant has hoarding behaviors and fails to follow directions from the police. The report also states that appellant can[not] set limits with his behavior [which] [t]hen * * * adds to impulsive acts," and that appellant has no insight into his mental illness. The report states that appellant is a mentally ill person subject to involuntary hospitalization under R.C. 5122.01(B)(1) and (2) and that the least restrictive setting would be inpatient hospitalization with medication to stabilize his behavior. While the report clearly states that appellant is not subject to involuntary hospitalization under R.C. 5122.01(B)(3), it is not equally clear as to the application of R.C. 5122.01(B)(4). While the report states that appellant would not "benefit from treatment in a hospital * * * as manifested by evidence of behavior that creates a grave and imminent risk to substantial rights of others or himself," it nevertheless not only explains that hospitalization would "help his judgment, attitude and behavior to help him feel better," it also states that the least restrictive setting would be inpatient hospitalization.
At the end of the commitment hearing, the magistrate found that appellant was a mentally ill person subject to involuntary hospitalization under R.C. 5122.01(B)(3) and (4) on the grounds that appellant's "mental illness has created in [him a] behavior that has made it impossible for [him] to retain housing, * * * a basic physical need," for very long, and that appellant's "behavior has created a grave and imminent risk to the substantial rights of others," in particular the right of the people living above or beside appellant "to the quiet enjoyment of their place of residence" without "having to move or * * * wear gas masks * * * to be able to live there."
Appellant challenges the magistrate's finding that housing is a basic need, arguing that there is no case law or statutory authority that maintaining a private dwelling constitutes a basic physical need within the meaning of R.C. 5122.01(B). While this is true, we nevertheless find that the magistrate, as ratified by the trial court, properly labeled housing as a basic physical need. R.C. 340.03 sets forth the duties of boards of alcohol, drug addiction, and mental services and provides that such boards shall provide "[a]ssistance for clients to obtain services necessary to meet basic human needs for food, clothing,shelter, medical care, personal safety, and income[.]" R.C 340.03
(A)(9)(b) (formerly R.C. 5119.06[b]). (Emphasis added.) See, also,Coleman v. Coleman (1972), 32 Ohio St.2d 155 (referring to shelter in the welfare context as one of the very means to subsist and as a necessity of life).
Appellant also challenges the magistrate's finding that appellant's behavior created a grave and imminent risk to others' right to quiet enjoyment of their property. Appellant argues that there was "[no] proof" that appellant's activities either caused others to vacate their property or interfered with the use of their property. We disagree. The health department's file regarding appellant's residence at 220 Sycamore Street clearly shows that the department received complaints that appellant's residence was filthy with old food, garbage, and waste and that a terrible stench emanated from it. The record also clearly shows that in one of the houses where appellant resided, both upstairs tenants were evacuated due to the odor and the conditions of appellant's residence, and that the house was evacuated and closed up.
Based upon a thorough review of the evidence and testimony presented in this case, we find that there is clear and convincing evidence to support the trial court's conclusion that appellant is a mentally ill person subject to hospitalization under R.C.5122.01(B)(3) and/or (4). Appellant's illness results in more than appellant merely being evicted and hoarding food. It also results in appellant living in a paranoiac state and being, or risking being victimized by others, based upon appellant's clear inability to deal with reality, to interact with others, and to meet with ordinary aspects of life such as caring for his basic needs. Appellant's first assignment of error is overruled.
Appellant's second assignment of error reads as follows:
 THE PROBATE COURT ERRED TO THE SUBSTANTIAL PREJUDICE OF RESPONDENT BY FAILING TO STAY THE PROCEEDINGS PENDING DISPOSITION OF THIS APPEAL AND BY ISSUING A SUBSEQUENT ORDER OF CONTINUED COMMITMENT.
We note at the outset that while appellant's motion to stay was taken under advisement, it apparently was never ruled upon. It is well-established that "[g]enerally, when a trial court fails to rule on a motion, the appellate court will presume the trial court overruled the motion." Dozer v. Dozer (1993), 88 Ohio App.3d 296,303.
The record shows that the magistrate took appellant's motion to stay under advisement during the September 30, 1998 hearing regarding the continued commitment of appellant. At the end of that hearing, the magistrate again found appellant to be a mentally ill person subject to involuntary hospitalization under R.C. 5122.01(B). Appellant argues that his filing of a notice of appeal from the trial court's August 28, 1998 entry divested the trial court of jurisdiction to take any actions other than actions in aid of the appeal. Appellant contends that the magistrate's September 30, 1998 hearing regarding appellant's continued commitment, the magistrate's subsequent finding to continue appellant's involuntary hospitalization, and the trial court's November 17, 1998 adoption of the magistrate's finding were null and void as they were inconsisent with and not in aid of the appeal. We disagree.
R.C. 5122.15(H) provides in relevant part as follows:
 If, at the end of the first ninety-day period * * *, there has been no disposition of the case, either by discharge or voluntary admission, the hospital, facility, board, agency, or person shall discharge the patient immediately, unless at least ten days before the expiration of the period the attorney the board designates or the prosecutor files with the court an application for continued commitment. * * *
 The court shall hold a full hearing on applications for continued commitment at the expiration of the first ninety-day period and at least every two years after the expiration of the first ninety-day period.
 Hearings following any application for continued commitment are mandatory and may not be waived.
 If the court, after a hearing for continued commitment finds by clear and convincing evidence that the respondent is a mentally ill person subject to hospitalization by court order, the court may order continued commitment * * *.
R.C. 5122.15(H) clearly states that a person who is originally committed for ninety days must be discharged at the end of that period unless at least ten days before the period expires, the attorney general or another authority has applied for continued commitment. R.C. 5122.15(H) unequivocally provides that in that case, a hearing regarding the application for continued commitment is mandatory and may not be waived. The state in such a case again has the burden of proving by clear and convincing evidence that the patient is a mentally ill person subject to hospitalization by court order. See State v. Johnson (1987),32 Ohio St.3d 109. Thus, a hearing regarding an application for continued commitment is, in essence, a de novo hearing which must be conducted in accordance with R.C. Chapter 5122 following the expiration of the original judgment entry of commitment.
In the case at bar, by judgment entry filed May 29, 1998, the magistrate found appellant to be a mentally ill person subject to involuntary hospitalization and ordered that he be committed for a period not to exceed ninety days. By its own terms, the order of commitment expired on August 27, 1998. R.C. 5122.15(J) provides that with the exception of an order of contempt of court, a magistrate appointed by the trial court "may make all orders that a judge may make" and that the orders of a magistrate "take effect immediately."
The record shows that sometime prior to the expiration of the initial ninety-day period of commitment, the Board filed an application for continued commitment of appellant. The record also shows that appellant filed a motion to continue the hearing regarding the Board's application for continued commitment. Such hearing was eventually held on September 30, 1998. Under the clear language of R.C. 5122.15(H), once the original judgment entry of commitment expired and once the trial court ruled upon appellant's objections to the magistrate's judgment entry, no further proceedings were needed or conducted. Similarly, under the clear language of R.C. 5122.15(H), once the Board filed an application for continued commitment, the magistrate had no discretion but to hold a hearing on the application and to determine whether the Board had proven once again that appellant was a mentally ill person subject to involuntary hospitalization. These proceedings were on new matters and thus separate and apart from the magistrate's original judgment entry of commitment.
We therefore hold that the trial court did not err in impliedly overruling appellant's motion to stay and in ruling on the Board's application for continued commitment of appellant. Appellant's second assignment of error is overruled.
Judgment affirmed.
POWELL, P.J., and VALEN, J., concur.
[1] The magistrate's May 29, 1998 judgment entry expired on August 27, 1998, or ninety days after May 29, 1998. Appellant, however, filed a motion to continue the hearing regarding his continued commitment. Such hearing was subsequently held on September 30, 1998. By entry filed September 31, 1998, the magistrate again found appellant to be a mentally ill person subject to involuntary hospitalization. Appellant subsequently objected to this entry. On November 17, 1998, the trial court adopted the magistrate's September 31, 1998 entry. However, appellant did not appeal this judgment. As a result, this present appeal only concerns the magistrate's May 29, 1998 judgment entry and the trial court's August 28, 1998 adopting entry.